**David JEMMOTT, Jr., Plaintiff–Appellee,**

**v.**

**Thomas COUGHLIN, as Commissioner of the New York State Department of Correctional Services; Joseph W. Kennedy, Individually and as Superintendent of the Mt. McGregor Correctional Facility; James Murphy, Individually and as Captain at Mt. McGregor Correctional Facility; Thomas Carpenter, Individually and as Lieutenant at Mt. McGregor Cor-**

62

rectional Facility; Felix Perry, Individually and as Sergeant at Mt. McGregor Correctional Facility; William Schnorr, Individually and as Lieutenant at Mt. McGregor Correctional Facility; Richard Windel, Individually and as Lieutenant at Mt. McGregor Correctional Facility; Richard Little, Individually and as a Correction Officer at Mt. McGregor Correctional Facility; and Clyde Sanbourne, Individually and as Sergeant at Mt. McGregor Correctional Facility, Defendants–Appellants.

No. 540, Docket 95–7235.

United States Court of Appeals,
Second Circuit.

Argued Nov. 1, 1995.

Decided May 23, 1996.

Daniel Smirlock, Assistant Attorney General, Albany, NY (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Nancy A. Spiegel, Assistant Attorney General, Albany, NY, of counsel), for Defendants–Appellants.

Lanny E. Walter, Albany, NY (Walter, Thayer, & Mishler, P.C., Albany, NY, of counsel), for Plaintiff–Appellee.

Before: VAN GRAAFEILAND, JACOBS and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Defendants-appellants challenge a decision of the United States District Court for the Northern District of New York, Thomas J. McAvoy, *Judge,* denying their motion for summary judgment. Plaintiff-appellee alleges that defendants subjected him to severe harassment on the job because of their animosity towards him as an African–American Correction Officer, in violation of 42 U.S.C. § 2000e–2(a)(1) ("Title VII"), and 42 U.S.C. §§ 1981 and 1983. The individual defendants ask this court to reverse the district court's denial of qualified immunity on the § 1983 claim. Because we find that, if proven, defendants' alleged conduct violated Jemmott's clearly established rights, and that it was not objectively reasonable for the defendants to believe otherwise, we affirm the order of the district court denying their motion for summary judgment.

## I. BACKGROUND

Plaintiff David Jemmott is a Correction Officer at Mt. McGregor Correctional Facility in Saratoga County, New York. Mt. McGregor is a medium/minimum security prison that employs approximately 280 security officers. Of these 280 officers, two, including Jemmott, are African–American.

Jemmott commenced the present action in the United States District Court for the Northern District of New York on May 27, 1993. His complaint, as later amended, alleged that defendants had discriminated against him on the basis of his race in violation of 42 U.S.C. § 2000e–2(a)(1) ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983. The complaint named as defendants nine employees of the New York State Department of Correctional Services ("DOCS"): Thomas Coughlin, DOCS Commissioner; Joseph W. Kennedy, Superintendent of Mt.

McGregor; James Murphy, Captain at Mt. McGregor; Thomas Carpenter, William Schnorr, and Richard Windel, Lieutenants at Mt. McGregor; Felix Perry and Clyde Sanbourne, Sergeants at Mt. McGregor; and Richard Little, Correction Officer at Mt. McGregor. All of the defendants are white, and all but Coughlin were sued in their individual as well as their official capacities.[1] Superintendent Kennedy and Captain Murphy have supervisory authority over Jemmott, and over the remaining defendants.

## A. *Plaintiff's Allegations*

In support of his claim of racial discrimination, Jemmott's complaint describes incidents of harassment dating as far back as 1983. Incidents occurring prior to 1991, included in the complaint under the heading "Background Information," were not considered by the district court in denying the defendants' request for qualified immunity.[2] For the purpose of this appeal, we also confine our analysis to the harassing conduct alleged to have occurred in 1991. The eight incidents attributed to the defendants are described below.

In January 1991, Sergeant Perry accused Jemmott of failing to repossess civilian clothing that had been loaned to two prisoners for their work release. Prison officials subsequently discovered that Jemmott could not have been responsible for this security breach because he had not been working on the day it occurred. Jemmott alleges that Perry levelled this false accusation purposefully and knowingly in order to get Jemmott fired because Jemmott is an African–American who "will not ignore the racial bigotry that pervades Mt. McGregor." Captain Schnorr allegedly assisted Perry in making this false claim. Jemmott reported his suspicions to Superintendent Kennedy, who, to the best of Jemmott's knowledge, took no action.

During that same month, Sergeant Perry "arbitrarily" refused to give Jemmott keys to a storage area that he needed to do his job. Perry then referred to Jemmott as a "nigger." Jemmott reported this behavior to Superintendent Kennedy, who did not reprimand Perry. When Jemmott complained to Superintendent Kennedy, he referred the complaint to the Affirmative Action Office, but took no further action.

In March of 1991, Jemmott was again accused of allowing an inmate to keep civilian clothing in his cell, this time by Lieutenant Carpenter. The clothing, which the inmate had worn to court on December 28, was discovered in his cell on March 27. Jemmott admits that he worked on December 28, but claims that he took custody of the civilian clothes and returned them to the State shop as he was required to do. He alleges that Lieutenant Carpenter, at the direction of Captain Murphy and with the cooperation of Superintendent Kennedy and Lieutenant Schnorr, planted the clothing in the prisoner's cell in order to cause Jemmott to be fired or to resign. In support of this claim, Jemmott points out that the prisoner's cell had been searched twice between December 28 and March 27. No civilian clothing had been found. In addition, the clothing was not held as contraband as Department regulations require, but was returned to storage and mixed with the rest of the civilian clothing wardrobe.

In May of that same year, Jemmott requested and was granted a shift change. With his change in shifts came a change in his regular days off. Although he arranged the shift change, Lieutenant Windel did not inform Jemmott of his new days off. Jemmott asked Correction Officer Little, the "re-

---

**1.** Since Commissioner Coughlin was not sued in his individual capacity, he is not eligible for qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Genas v. State of New York Dep't of Correctional Servs.*, 75 F.3d 825, 829 n. 3 (2d Cir.1996). Therefore, we do not consider him as an appellant in this action and none of our statements about the sufficiency of Jemmott's allegations applies to him.

**2.** Although it is not clear from the record, Jemmott may have stipulated that the pre–1991 incidents are time barred because they occurred outside Title VII's three year limitations period. We make no comment as to whether incidents occurring before 1991 are relevant to Jemmott's claims, since the 1991 incidents provide sufficient ground to affirm the district court's denial of qualified immunity.

sponsible person," when he was scheduled to be off. Little told him May 27 and 28, and Jemmott did not appear for work on these days. He subsequently learned that his actual days off were May 27, June 1 and June 2. Jemmott was accused of being absent without authorization on May 28, and was denied one day's pay. He claims that Windel and Little conspired to cause him lost wages and aggravation because of their bias toward him as an African–American Correction Officer.

On June 11, Sergeant Perry was in charge of correction officer assignments. According to prison procedure, he was to give the available correction officers a choice of assignment based on seniority. Even though Jemmott had the most seniority among the available officers, Perry assigned him to an undesirable post in the infirmary. A less senior officer was assigned to the job Jemmott preferred. When Jemmott complained, Perry replied: "I don't give a fuck about seniority. You have the infirmary." Jemmott brought this treatment, which he claims stemmed form Perry's bias towards an African–American Correction Officer, to the attention of Commissioner Coughlin and Superintendent Perry. To the best of plaintiff's knowledge, no action was taken against Perry.

In July, Superintendent Kennedy revoked Jemmott's right to carry a firearm while off-duty after a citizen complained that Jemmott had used his handgun in an improper manner. Jemmott disputes the particulars of the incident and claims that white officers are not denied this privilege under similar circumstances.

On August 27, Jemmott made a routine request for backup support from other guards while working in the infirmary. He registered his request with Sanbourne, who denied the assistance after consulting with Carpenter. Plaintiff believes that white officers are routinely given assistance in similar

circumstances and that the incident was designed to remind him "who's in charge."

Finally, also on August 27, Captain Murphy ordered that Jemmott be searched in the infirmary, in front of prisoners, after having received a report that Jemmott was carrying a pager in violation of prison policy. Routine policy dictates that an officer should be taken into a private area before being searched. Nothing improper was found during the search.

### B. The Proceedings Below

In October 1991, Jemmott initiated formal action against the defendants by filing a complaint with the Equal Opportunity Employment Commission ("EEOC"). After obtaining a right to sue letter on April 8, 1993, Jemmott filed suit in district court.

Based in part on a claim of qualified immunity, the defendants moved for summary judgment on October 28, 1994. Holding that Jemmott's colorable allegations of harassing conduct undertaken with discriminatory animus precluded a finding of qualified immunity, the district court denied the motion.[3] This appeal followed.

## II. DISCUSSION

### A. Appellate Jurisdiction

Ordinarily, the federal courts of appeals may exercise jurisdiction only over "final decisions" of the district courts. 28 U.S.C. § 1291. Thus, interlocutory appeal is generally not available from a denial of summary judgment. *Rivera v. Senkowski*, 62 F.3d 80, 83 (2d Cir.1995). However, under the "collateral order" doctrine, a pre-trial order, such as a denial of summary judgment, may be appealable if the decision falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too inde-

---

**3.** Jemmott's § 1981 claim was dismissed in light of the Supreme Court's decisions in *Patterson v. McLean Credit Union*, 491 U.S. 164, 176–78, 109 S.Ct. 2363, 2372–73, 105 L.Ed.2d 132 (1989), and *Rivers v. Roadway Express, Inc.*, —— U.S. ——, ——, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994). Together, those cases establish that

prior to the enactment date of the Civil Rights of Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, § 1981 applied to discrimination in the formation of contracts, but not in the performance of contracts. Jemmott does not appeal this decision.

pendent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).

██ The Court applied *Cohen*'s reasoning to some claims of qualified immunity in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The doctrine of qualified immunity provides that officers performing discretionary functions are immune from liability for civil damages if their conduct either "did not violate clearly established rights of which a reasonable person would have known, or that it was objectively reasonable to believe that [their] acts did not violate these clearly established rights." *Soares v. Connecticut,* 8 F.3d 917, 920 (2d Cir.1993) (internal quotations omitted); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). The doctrine is intended to strike a fair balance between (1) the "need to provide 'a realistic avenue for vindication of constitutional guarantees,'" *Martin v. D.C. Metro. Police Dep't,* 812 F.2d 1425, 1433 (D.C.Cir. 1987) (quoting *Harlow,* 457 U.S. at 814, 102 S.Ct. at 2736), and (2) the "'need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" *Id.* at 1433 (quoting *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)).[4] Since qualified immunity recognizes a limited entitlement not to stand trial or face the other burdens of litigation, the Supreme Court held that interlocutory appeal may be had from a district court opinion denying qualified immunity if the decision turned on a question of law. *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815 ("The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."); *see also Johnson v. Jones,* —— U.S. ——, ——, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995). However, courts of appeals do not have juris-

diction to review a denial of qualified immunity based on a question of fact, such as "'evidence sufficiency', i.e. which facts a party may, or may not, be able to prove at trial." *Johnson,* —— U.S. at ——, 115 S.Ct. at 2156.

██ In this case, the defendants' motion seeking summary judgment on the ground of qualified immunity was denied by the district court because "plaintiff has raised questions of fact as to the defendants' actions and intent sufficient to preclude a finding" of qualified immunity at this stage. For the purpose of this appeal, however, the defendants are not contesting the sufficiency of plaintiff's proof, or the district court's ruling that disputed issues of fact require the denial of their summary judgment motion. Instead, they argue that even if plaintiff's allegations are accepted as true, no clearly established constitutional right was violated. Thus, we proceed as if the defendants had moved to dismiss plaintiff's complaint under Rule 12(b)(6) for failure to "state a claim of violation of clearly established law." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. *See also Behrens v. Pelletier,* —— U.S. ——, ——, 116 S.Ct. 834, 840, 133 L.Ed.2d 773 (1996) ("legally relevant factors" on qualified immunity issue are different at motion to dismiss stage than at summary judgment stage); *Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991) (same). The district court's rejection of the defendants' argument is a purely legal determination that we have jurisdiction to review. *See Mitchell,* 472 U.S. at 528 n. 9, 105 S.Ct. at 2816 n. 9 (holding that an appeals court could review a district court's denial of summary judgment for qualified immunity when the issue was a "purely legal one: whether the facts alleged ... support a claim of violation of clearly established law"); *Behrens,* —— U.S. at ——, 116 S.Ct. at 842.

**B.** *The Merits of Defendants' Qualified Immunity Claim*

██ Defendants claim that they are entitled to qualified immunity because, even if

---

**4.** Qualified immunity is intended to alleviate, *inter alia,* the "distraction of officials from their governmental duties, [the] inhibition of discretionary action, and deterrence of able people from public service." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815 (quoting *Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737).

they mistreated Jemmott in precisely the manner he alleges, it was objectively reasonable for them to think that their actions did not violate his clearly established rights. Their reasoning is as follows: Jemmott bases his § 1983 claim, grounded in the Equal Protection clause, on defendants' supposed creation of a race-based hostile work environment at Mt. McGregor. According to Title VII law, which is utilized by courts considering § 1983 Equal Protection claims, a plaintiff must prove discrimination that was "sufficiently severe or pervasive" to alter the conditions of his employment in order to prevail on a hostile work environment claim. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). There is no *respondeat superior* liability under § 1983. *Gierlinger v. New York State Police,* 15 F.3d 32, 34 (2d Cir.1994). Therefore, before holding any one individual defendant liable, a court would have to find that he personally behaved in such a way as to create an atmosphere of severe and pervasive harassment. According to defendants, no individual's actions, considered in isolation, were sufficiently severe or pervasive to give rise to a hostile environment claim. Thus, each defendant is entitled to qualified immunity on Jemmott's § 1983 claim.

It is true that several circuits have held that, when § 1983 is used as a parallel remedy with Title VII in a discrimination suit, as it is here, the elements of the substantive cause of action are the same under both statutes. *See Risinger v. Ohio Bureau of Workers' Compensation,* 883 F.2d 475, 483 (6th Cir.1989); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 898 (1st Cir.1988); *Nilsen v. City of Moss Point,* 701 F.2d 556, 559 n. 3 (5th Cir.1983) (en banc). In addition, to state a hostile work environment claim under Title VII, it is well established that a plaintiff must point to conduct "severe or pervasive" enough to result in an environment that "would reasonably be perceived, and is perceived, as hostile or abusive." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, ——, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). Finally, there is clearly no *responde-*

*at superior* liability under § 1983. *Gierlinger,* 15 F.3d at 34.

Nonetheless, we reject defendants' assertion that they are entitled to qualified immunity from Jemmott's § 1983 claim. Each individual defendant's alleged conduct towards Jemmott, if proven, did amount to "severe and pervasive" harassment, which therefore violated Jemmott's clearly established rights.

The Supreme Court has held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris,* 510 U.S. at ——, 114 S.Ct. at 371. Relevant circumstances identified by the Court include the "severity" of the conduct, "whether it is physically threatening or humiliating, or a mere offensive utterance; and *whether it unreasonably interferes with an employee's work performance." Id.* (Emphasis added). As alleged by Jemmott, each defendant intentionally jeopardized his ability to perform or even keep his job (planting clothing in order to frame him, tricking him into skipping a day of work, and levelling false charges against him), or put him in danger of physical harm (refusing to send requested back-up assistance, and humiliating him in front of prisoners he is required to control). We hold that the acts of each defendant, if true as alleged, were sufficiently severe to create a hostile or abusive work environment under the factors articulated in *Harris.* If the alleged acts were caused by discriminatory animus towards Jemmott as a black Correction Officer, they violated clearly established law. We simply cannot accept defendants' contention that an objectively reasonable correction officer would believe in 1991 that attempting to get a co-worker fired because of his African–American origins was not clearly against the law.

■ In addition, at least two defendants, Superintendent Kennedy and Captain Murphy, are not entitled to qualified immunity at this stage in the litigation as a result of their supervisory authority over the remaining appellants.[5] Jemmott has alleged that, al-

---

**5.** We leave to further factual development the issue of whether other defendants acted improp-

erly in supervisory roles or not.

though he informed both supervisors of the harassment to which he was subjected, they failed to reasonably investigate or address his allegations. If such nonresponsiveness is shown to lead to an environment in which discrimination is an "accepted custom or practice" of an employer, it violates an employee's clearly established right to work in an environment free of race-based invidious discrimination. *Gierlinger,* 15 F.3d at 34.

Of course, to prevail at trial on his Equal Protection claim, Jemmott must prove that defendants intentionally discriminated against him based on his race. *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Washington v. Davis,* 426 U.S. 229, 245, 96 S.Ct. 2040, 2050, 48 L.Ed.2d 597 (1976). The district court found that Jemmott has articulated sufficient facts at this stage to withstand summary judgment. Given this finding, and the fact that defendants are accused of violating what they reasonably should have known is a clearly established right, we decline to grant qualified immunity to the defendants.

The decision of the district court is affirmed.

VAN GRAAFEILAND, Circuit Judge, concurring:

I concur in the result.