**Mildred GONZALEZ, Plaintiff,**

v.

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES FISHKILL CORRECTIONAL FACILITY, Corrections Officer Herbert Reilly, Sergeant Mann, Captain Ercole, Deputy Superintendent of Security Clark as aiders and abettors, Defendants.**

No. 00–CV–0632.

United States District Court, N.D. New York.

Nov. 29, 2000.

---

Law Offices of Moran & Gottlieb, Kingston, NY (Steven Gottlieb, of counsel), for Plaintiff.

Office of Attorney General, Albany, NY (Krista Zinser, Asst. Atty. Gen., of counsel), for Defendants.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

Plaintiff Mildred Gonzalez commenced the instant action pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1983 contending that she was discriminated against with respect to the terms and conditions of her employment on account of her gender, race, color, and national origin. Presently before the Court are: (1) Defendants' motion pursuant to FED. R. CIV. P. 12(b)(6) seeking to dismiss the Complaint for failure to state a claim; and (2) Plaintiff's cross-motion for leave to file an amended complaint.

## I. BACKGROUND

Because this matter is before the Court on Defendants' motion pursuant to FED. R. CIV. P. 12(b)(6), the following facts elicited from the Complaint are accepted as true and presented in the light most favorable to Plaintiff.

Plaintiff is a Hispanic female employed by the New York State Department of Correctional Services ("DOCS") at the Fishkill Correctional Facility ("Fishkill") in the City of Beacon, County of Dutchess, State of New York. Defendant Herbert Reilly ("Reilly") was also employed as a corrections officer at Fishkill. Defendants Sergean Mann ("Mann"), Captain Ercole ("Ercole"), and Deputy Superintendent of Security Services Clark ("Clark") are Plaintiff's superiors and supervisors.

In January 1996, Plaintiff's husband, Jose Gonzalez, who also is a corrections officer at Fishkill, wrote an affirmative action report stating that Reilly created an offensive and hostile work environment on account of race, color, and national origin. Shortly thereafter, Reilly filed an internal complaint against Plaintiff claiming that she was after his job and that she abused male inmates.

On February 2, 1996, Plaintiff complained to her supervisor, Ercole, that Reilly had been taunting her, making faces at her, and throwing papers at her desk. Plaintiff told Ercole that Reilly had stated that "I would have liked to marry you, if your husband wasn't around." Plaintiff also complained to Ercole that "based on the sexually harassing actions that she had experienced and the ongoing, retaliatory and hostile behaviors of Herbert Reilly towards her, that Herbert Reilly was going to 'Do something to her.'" Compl. at ¶ 23. Ercole took no action on Plaintiff's complaint.

Following Plaintiff's meeting with Ercole, she began to experience increased problems with Reilly. Reilly entered Plaintiff's job area daily and constantly taunted her with looks, threw paper at her, and dumped trash in her area. On numerous occasions (on February 9, 1996, February 27, 1996, February 29, 1996, April 16, 1996, August 22, 1996, and May 5, 1997), Reilly and the other Defendants refused to respond to Plaintiff's requests for assistance when dealing with inmates, thereby putting her into a life-threatening and dangerous situation. Mann and Ercole knew of the situation and did nothing in response. Moreover, male officers received assistance when they asked for it, but she, as a female, did not.

On February 27, 1996, Reilly intentionally bumped into Plaintiff with great force and then stated "Don't say anything" in a threatening tone. Later that day, Reilly shoved Plaintiff.

On March 4, 1996, Plaintiff discovered that her locker had been defaced, that her name had been crossed off of it, and that it was filled with trash. Based on Reilly's actions that day, Plaintiff believed this to be Reilly's doing.

On May 19, 1996, Plaintiff changed her work area location, purportedly because of the hostile work environment created by

Defendants. On August 22, 1996, ninety inmates were put under Plaintiff's single control. When Plaintiff contacted Mann for aid, he instructed Reilly to assist Plaintiff. Reilly refused. Mann refused to write up Reilly for insubordination.

Reilly frequently used derogatory terms and profanity, such as "Niggers" and "Spics," in Plaintiff's presence and often referred to women as "bitches" despite Plaintiff's requests that he discontinue the use of such language. Reilly also often used other profane language, in spite of Plaintiff's requests that he stop doing so.

In or about May 1997, Plaintiff complained to Mann about Reilly, but Mann declined to take any action. Also in May 1997, Reilly threatened Plaintiff in the presence of other corrections officers saying something to the effect of "Gonzalez is going to pay for this."

On June 12, 1997, Plaintiff received a package at her home addressed to Darnell Broom. Broom was an inmate in Plaintiff's work area at Fishkill. Plaintiff brought the package to Ercole who opened the box and found a book entitled "Secrets to a Better Sex Life." Plaintiff contends that Reilly was the likely source of the package. Ercole investigated the matter and determined that Broome did not send the book to Plaintiff. Neither Ercole nor Mann took any further action with respect to the package or investigated Reilly.

On June 25, 1997, Plaintiff received a subscription to "Penthouse" at her home addressed to Mitchell York, another inmate in her area. An identical incident occurred shortly thereafter, when Plaintiff received another "Penthouse" subscription at her home addressed to Angel Figuerca, another inmate in her work area. Plaintiff obtained copies of the subscription orders from the magazine's publishers and contends that the writing on those forms matches Reilly's handwriting.

Thereafter, Plaintiff filed a criminal complaint with the New York State Police. Reilly was arrested on charges of aggra-vated harassment. Reilly admitted to the police that he sent the subscriptions. Plaintiff obtained a protective order against Reilly lasting until December 22, 1997.

On July 24, 1997, Defendants suspended Reilly from his position because of his arrest. On October 5, 1997, Mann informed Plaintiff that both she and Reilly would be taking the sergeant's exam at Fishkill. Plaintiff objected and stated that she had an order of protection against Reilly. Ercole also telephoned Plaintiff to tell her that Reilly would be taking the test with her. Ercole apparently stated that he would not preclude Reilly from taking the exam notwithstanding the protective order.

On, the morning of the exam, Plaintiff learned that Reilly was going to take the exam at another facility. She also learned that Reilly was transferred to another facility.

On November 28, 1997, Plaintiff filed a charge of discrimination with the New York State Division of Human Right ("DHR"). On February 8, 2000, she received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). Plaintiff then commenced the instant action pursuant to Title VII and 42 U.S.C. § 1983 claiming discrimination on account of her gender, race, color, and national origin. Presently before the Court are Defendants' motion to dismiss the Complaint and Plaintiff's cross-motion to amend the Complaint.

## II. DISCUSSION

### A. Rule 12 Standard

As the Second Circuit has stated:

Dismissal of a complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted is not warranted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The task of the court in ruling on a Rule

12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. The court is required to accept as true all factual allegations in the complaint and to consider documents attached to or incorporated by reference in the complaint. Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one.

*Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (internal quotations and citations omitted). "The review of such a motion is limited, and the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. Furthermore, the standard is applied with even greater force where the plaintiff alleges civil rights violations." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (internal quotations, citations, and alterations omitted). With this standard in mind, the Court will now address Defendants' motion to dismiss.

### B. Eleventh Amendment

█ Defendants move to dismiss all state law causes of action against DOCS and Fishkill because the Eleventh Amendment bars such an action in federal court. It is well-settled that states may not be sued in federal court absent a clear congressional abrogation of their immunity or the state's express consent. *See Richardson v. New York State Dept. of Correctional Service,* 180 F.3d 426, 448 (2d Cir.1999). Here, Congress has not abrogated New York State's Eleventh Amendment immunity as to the state law causes of action and the State has not consented to such suits. Accordingly, because Fishkill and the DOCS are arms of the state, the state law causes of action against them must be dismissed. *See id.* at 449.

### C. Failure to Serve Defendant Clark

Defendants move to dismiss the action against Clark because Plaintiff has failed to serve him in accordance with FED. R. CIV. P. 4(m). As will be discussed *infra* at § II(f), Plaintiff's opposition papers are being stricken for failure to comply with FED. R. CIV. P. 11(a). Thus, Plaintiff has failed to demonstrate any cause for the failure to serve Clark. Even considering Plaintiff's defective opposition papers, her only excuse is that Defendants would not accept service on Clark's behalf and that "despite diligent efforts," she has obtained only a post office box as a new address for Clark. However, there is no indication of what "diligent" efforts Plaintiff undertook to serve Clarke and Plaintiff has not requested additional time within which to serve Clark. Accordingly, Plaintiff's Complaint against Clark is dismissed without prejudice pursuant to FED. R. CIV. P. 4(m).

### D. Individual Liability Under Title VII

█ Defendants correctly note that individuals may not be held liable under Title VII. *See Wrighten v. Glowski,* 232 F.3d 119 (2d Cir.2000); *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 74 (2d Cir.2000). Accordingly, the Title VII claims against the individual Defendants are dismissed.

### E. Timeliness

Pursuant to 42 U.S.C. § 2000e–5(e), a charge of discrimination must be filed within 300 days "after the alleged unlawful employment practice occurred." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998). "This requirement functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." *Id.* (internal citations omitted).

Because Plaintiff filed her charge of discrimination with the DHR on November 28, 1997, her Title VII cause of action will not include any incidents that occurred

prior to February 2, 1997 unless she can demonstrate that she falls under the continuing violation exception.

■ "The continuing violation doctrine allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir.1997). "The continuing-violation exception 'extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations.'" *Quinn*, 159 F.3d at 765 (quoting *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir.1998)). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" *Id.* (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994)). "However, a continuing violation may be found 'where there is proof of specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Id.* (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994)). The continuing violation doctrine is disfavored and will be applied only upon a showing of compelling circumstances. *See Findlay v. Reynolds Metals Co.*, 82 F.Supp.2d 27, 37 (N.D.N.Y.2000) (McAvoy, J.) (and cases cited therein).

■ Liberally read, the Complaint alleges a pattern of discriminatory conduct beginning in January 1996 and extending until October 1997 that DOCS and Fishkill permitted to continue unremedied. The acts are purported to be part of a single discriminatory or retaliatory scheme and consist of similar, related incidents. This is sufficient at this early stage of the litigation to keep in all of Plaintiff's claims notwithstanding the 300 day bar. Defendants may, of course, later move for summary judgment on this issue after there has been discovery.

## F. Failure to State a Claim

Defendants next move to dismiss claiming that the Complaint fails to state a claim against the DOCS or Fishkill. Defendants contend that there are no facts in the Complaint suggesting that Plaintiff was discriminated against on account of her gender, race, color, or national origin. Defendants further assert that the incidents alleged in the Complaint are insufficient as a matter of law to constitute a hostile work environment. As to the retaliation claim, Defendants assert that Plaintiff has failed to properly allege adverse employment action or sufficient facts demonstrating a causal connection between her alleged protected activity and any adverse employment action.

■ Plaintiff's response consists of an unsigned attorney's affidavit along with supporting exhibits. This presents numerous problems. First, it is well-settled that in acting upon a motion to dismiss, the Court is not to consider materials outside of the pleadings. *See, e.g., Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir.2000). Plaintiff is apparently proceeding upon the mistaken belief that Defendants filed a motion for summary judgment pursuant to FED. R. CIV. P. 56. Defendants' notice of motion, however, makes it clear that they are moving pursuant to Rule 12(b) to dismiss the Complaint for failure to state a claim upon which relief may be granted. Accordingly, the Court will consider only the pleadings.

Second, pursuant to the Court's local rules, Plaintiff was required to submit a memorandum of law, which she did not, and was not permitted to submit an affidavit, which she did. *See* N.D.N.Y.L.R. 7.1(a). The affidavit submitted contains legal argument in violation of the local rules. *See id.* at 7.1(a)(2).

Third, pursuant to FED. R. CIV. P. 11(a), "[a]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney for party." Defendant's reply papers dated November 6, 2000 point out Plaintiff's counsel's failure to sign his opposition papers. To date, Plaintiff's counsel has failed to correct this error. Accordingly, the Court strikes Plaintiff's opposition papers from the record (docket # 21). The Court will now turn to the merits of Defendant's motion to dismiss.

■ To state a claim under Title VII, Plaintiff must show that she is (1) a member of a protected class, (2) qualified for and satisfactorily performing her job, (3) subjected to an adverse employment decision, and that (4) this adverse decision occurred under circumstances giving rise to an inference of discrimination. *Tarshis v. Riese Organization*, 211 F.3d 30, 36 (2d Cir.2000).

> A plaintiff alleging racial or gender discrimination ... must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.... Therefore, a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6).

*Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir.1994) (internal quotations and citations omitted).

The Complaint clearly satisfies the first element (protected class) because Plaintiff alleges that she is a Hispanic female. Although the Complaint does not specifically address the issue of job qualification, the second element, this element is not at issue here. In any event, there is no suggestion that Plaintiff was not qualified for, or otherwise did not satisfactorily perform, her job.

The third and fourth elements are claimed to be satisfied because of the alleged hostile work environment in which Plaintiff was forced to work that adversely impacted the terms and conditions of her employment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *see also Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2272, 141 L.Ed.2d 633 (1998) (Thomas, J. dissenting); *Adams v. New Jersey Transit Rail Operations*, 2000 WL 224107, at * 10 (S.D.N.Y.2000). Thus, the Court will now address the hostile work environment claim.

## 1. Hostile Work Environment

Defendants assert that Plaintiff's Complaint fails to state a claim for a hostile work environment because most of the alleged incidents are non-sexual in nature, there is no indication that any of the actions taken by Defendants were on account of Plaintiff's gender, and, at most, Plaintiff was subjected to isolated incidents of harassment insufficient to rise to the level of a hostile work environment.

■ Title VII is violated when sexual harassment is so severe or pervasive as to alter the conditions of the Plaintiff's employment and create an abusive working environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986)); *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310 (2d Cir.1999); *Richardson*, 180 F.3d at 436. "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor*, 106 S.Ct. at 2404 (1986); *see also Williams v. County of Westchester*, 171 F.3d 98, 100 (2d Cir.1999).

■ To be actionable, "[t]he conduct alleged must be severe and pervasive

enough to create an environment that 'would reasonably be perceived, and is perceived, as hostile or abusive.' " *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997); *see also Faragher*, 118 S.Ct. at 2283; *Brennan*, 192 F.3d at 318. In determining whether an environment is sufficiently hostile or abusive, courts examine the totality of the circumstances, *see Richardson*, 180 F.3d at 437, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) what psychological harm, if any, resulted. *See Faragher*, 118 S.Ct. at 2283; *Richardson*, 180 F.3d at 437.

"Simple teasing, offhand comments, and isolated incidents (unless extremely serious), will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (internal citations and quotations omitted); *see also Richardson*, 180 F.3d at 437. "In order to meet [her] burden, the plaintiff must show 'more than a few isolated incidents of [gender or race-based] enmity,' 'there must be a steady barrage of opprobrious [gender or race-based] comments,' evidence solely of 'sporadic [gender or race-based] slurs' does not suffice." *Williams*, 171 F.3d at 100 (quoting *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir.1986); *Schwapp*, 118 F.3d at 110); *see also Brennan*, 192 F.3d at 318; *Richardson*, 180 F.3d at 437. Title VII is not to be used as "a general civility code," but is actionable only for conduct sufficiently "extreme to amount to a change in the terms and conditions of employment." *Williams*, 171 F.3d at 100. Pervasiveness and severity are independent and equal grounds on which to support violations of Title VII. *See Faragher*, 118 S.Ct. at 2283 (extremely serious isolated incidents may be actionable); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (there must be conduct that is "sufficiently severe or pervasive"); *see also Witt v.*

*Roadway Express*, 136 F.3d 1424, 1432 (10th Cir.), *cert. denied*, 525 U.S. 881, 119 S.Ct. 188, 142 L.Ed.2d 153 (1998); *Quinn*, 159 F.3d at 768; *Tomka*, 66 F.3d at 1305; *Torres v. Pisano*, 116 F.3d 625, 631 n. 4 (2d Cir.), *cert. denied*, 522 U.S. 997, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997).

To establish a hostile work environment claim, "[a] plaintiff must also demonstrate that she was subjected to the hostility because of membership in a protected class. In other words, an environment which is equally harsh for both men and women [or for all races] ... does not constitute a hostile working environment under the civil rights statutes." *Brennan*, 192 F.3d at 318.

The Complaint clearly alleges inappropriate conduct by Reilly towards Plaintiff. The Complaint alleges that Reilly frequently used the terms "niggers," "spics," and "bitches," and other offensive language, that he frequently glared at her, that he often dumped trash in her work area, that he defaced her locker and filled it with trash, that, on several occasions, he made physically inappropriate contact with Plaintiff, that he refused to assist her when she needed aid thereby jeopardizing her safety, and that he sent sexual literature to her home on more than one occasion. The Complaint also claims that Reilly assisted the male corrections officers when they called for aid, but that he refused to assist her in the same situations. Further, the Complaint alleges that Reilly did not dump trash in the male corrections officers' work areas. All of this conduct is alleged to have occurred during the approximately 22 month period from January 1996 to October 1997.

These allegations in the Complaint, which the Court must accept as true, are sufficiently pervasive and severe to state a hostile work environment claim. The Complaint alleges that Reilly engaged in an ongoing pattern or harassment and discrimination and that some of the alleged conduct occurred on a "daily basis." *See*

Compl. at ¶ 25. This satisfies Plaintiff's pleading obligations as to the pervasiveness element. *See Schwapp*, 118 F.3d at 111 (ten racial incidents over a 20 month period sufficient to defeat motion for summary judgment).

■■■ The Complaint's allegations of Reilly's continual use of foul language, sending sexually explicit magazines and books to Plaintiff's home, refusing to assist Plaintiff in potentially dangerous situations, and intentionally bumping into Plaintiff on at least two occasions also is sufficient to plead severity. These allegations suggest that Reilly subjected Plaintiff to more than mere insults or simple humiliation, but potentially physically threatening conduct. Furthermore, such allegations are sufficient to demonstrate conduct that would unreasonably interfere with one's job performance and could result in psychological harm. It would be reasonable for Plaintiff to find it difficult to perform her job duties if, for example, she was subjected to offensive physical contact by Reilly or he refused to assist her in overseeing inmates. *See Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir.1996). In short, if the facts alleged in the Complaint are proven to be true, they would be sufficient to establish "a series of incidents ... sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) (internal quotation marks omitted).

■■■ An important remaining question, however, is whether the Complaint sufficiently alleges facts tending to suggest that Reilly's actions were based on Plaintiff's membership in a protected class. *See Brennan*, 192 F.3d at 318. Indeed, the allegations in the Complaint linking Reilly's behavior to Plaintiff's membership in a protected class are weak. As Defendants point out, there are plausible explanations for Reilly's behavior other than her membership in a protected class, such as retaliation for Plaintiff's husband's having filed an affirmative action report against Reilly.

The Court's function in ruling on a 12(b)(6) motion, however, is not to weigh evidence, but merely to ascertain whether the Complaint sufficiently alleges facts that, if proven to be true, would entitle Plaintiff to relief. *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998). Given the liberal standard with which Courts are to interpret Complaints, *see id.*, the Court finds that the Complaint sufficiently alleges facts that, if proven true, would permit a finding of discrimination on account of Plaintiff's membership in a protected class.

First, the Complaint alleges that Plaintiff is a Hispanic female and that Reilly is a white male. The Complaint also references Reilly's use of race-based derogatory terms such as "nigger" and "spic" in Plaintiff's presence. *See Torres*, 116 F.3d at 632 (use of work "spic" reasonably considered to be race-based offensive conduct); *see also Richardson*, 180 F.3d at 439. The Complaint similarly alleges that Reilly often referred to women as "bitches," a clearly gender-oriented term. *See Burns v. McGregor Electronic Industries, Inc.*, 989 F.2d 959, 964 (8th Cir.1993) (noting that use of "bitch" to woman was harassment based on her sex); *Winsor v. Hinckley Dodge, Inc.*, 79 F.3d 996, 1000 (10th Cir.1996) (noting that "bitch" is a "sexual epithet[ ] that ha[s] been identified as 'intensely degrading' to women."); *Jugmohan v. Zola*, 2000 WL 222186, at *3 (S.D.N.Y.2000); *Dyke v. McCleave*, 79 F.Supp.2d 98, 100 (N.D.N.Y.2000). It is of no moment that these remarks may not have been directed at Plaintiff specifically, particularly when the comments are alleged to have been made in her presence and after she requested Reilly to stop using such in appropriate language. *See Whidbee*, 223 F.3d at 70–71; *Schwapp*, 118 F.3d at 111 ("[A] a racial epithet need not be directed at a plaintiff in order to contribute to a hostile work environment."); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir.1997) (emphasizing "that sex-based comments need not be directed at a plaintiff in order to constitute conduct

violating Title VII"), *cert. denied,* 522 U.S. 865, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997). Furthermore, the allegation in the Complaint that Reilly stated to Plaintiff that "I would have liked to marry you, if your husband wasn't around" would likely only be directed to a female and, thus, constitutes a factual allegation suggesting gender-based discrimination. Certainly, Reilly's sending "how to" sex books and "Penthouse" magazine subscriptions can reasonably be considered to be gender-based conduct. Moreover, the Complaint alleges that Reilly would not dump trash in the work areas of male officers and that Reilly would assist male officers who requested help. While Plaintiff could have done more to plead facts tying her allegations to her membership in a protected class, viewing the Complaint liberally as the Court is required to do, the Court finds that it sufficiently alleges facts demonstrating discriminatory conduct on account of Plaintiff's membership in a protected class. Defendants' arguments that the facts of this matter do not sufficiently rise to the level of a hostile work environment and that Reilly's actions were not on account of Plaintiff's membership in a protected class are better left for a motion for summary judgment or for trial. For the instant purposes, the Complaint sufficiently states a hostile work environment claim.

### G. Employer Liability

Regardless of whether Plaintiff was actually subject to a hostile work environment, DOCS and Fishkill can only be liable for the hostile work environment claim if there is a basis for imputing Title VII liability to them. Here, a co-employee is alleged to have engaged in the conduct giving rise to the hostile work environment. "When a 'co-employee'—as distinct from a supervisor—is alleged to have engaged in harassing activity, the 'employer will generally not be liable unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it.'" *Quinn,* 159 F.3d at 766 (quoting *Tomka,* 66 F.3d

at 1305); *see also Richardson,* 180 F.3d at 441.

The Complaint alleges numerous instances where Plaintiff reported Reilly's conduct to her supervisors, but that they took no action. For example, Plaintiff reported Reilly's conduct to her supervisors as early as February 1996, but Defendants failed to take action. The Complaint specifically alleges that "[d]uring an official meeting on Feb 2 1996, Plaintiff ... told Captain Ercole that based on the sexually harassing actions that she had experienced and the ongoing, retaliatory and hostile behaviors of Herbert Reilly towards her, that Herbert Reilly was going to '[d]o something to her.'" Compl. at p. 23. The Complaint contends that "Captain Ercole did not consider Plaintiff's concerns for her safety on the job to be actionable and did nothing to protect her, nor did he or Defendant Sergeant Mann speak with or reprimand in any way Defendant Herbert Reilly." Compl. at ¶ 24. The Complaint also alleges that, in or about May 1996, Plaintiff requested that her position be changed, apparently so she could get away from Reilly, but that "her supervisors refused to help her change positions." Compl. at ¶ 34. Similarly, the Complaint alleges that in August 1996, Mann refused to write up Reilly for insubordination and told Plaintiff to leave her personal problems at home. *See* Compl. at ¶¶ 35, 36. In addition, the Complaint alleges that it was common knowledge that Plaintiff's supervisors refused to assist Plaintiff regarding her complaints about Reilly. *See* Compl. at ¶ 40. The Complaint also alleges that Plaintiff's supervisors did not contact or reprimand Reilly after he sent sexually oriented literature and periodicals to her home. *See* Compl. at ¶ 49. According to the Complaint, it was not until after Reilly was arrested that Defendants took any action in this matter. *See* Compl. at ¶ 54. Even after Reilly's arrest, the Complaint alleges that Plaintiff's supervisors contemplated allowing Reilly to take an exam alongside Plaintiff. These facts, if

true, demonstrate that Defendants were aware of the harassment but failed to take reasonable action in response thereto and, thus, are sufficient to impose liability upon Defendants. *See Richardson*, 180 F.3d at 426; *Murray v. New York University College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995) (and cases cited therein).

Although Defendants contend that they reasonably investigated Plaintiff's complaint and took proper remedial action, such arguments go to the ultimate merits of Plaintiff's Complaint; not whether she has pled sufficient facts entitling her to relief. Moreover, contrary to Defendants' contentions, as detailed above, the Complaint alleges that Plaintiff complained to her superiors about sexual harassment on several occasions, but that they failed to act for over a year. *See* Compl. at ¶¶ 21–24, 54. Thus, these arguments do not form a basis for dismissal at this stage of the litigation.

## H. Retaliation

Next, Defendants move to dismiss Plaintiff's retaliation claim. "To establish a prima facie case of retaliation a plaintiff must show (1) participation in a protected activity that is known to the defendant, (2) an employment decision or action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse decision." *Richardson*, 180 F.3d at 443.

Here, the Complaint alleges that Plaintiff complained to her supervisors about discriminatory harassment by Reilly. This constitutes protected activity. *See id.* at 443. There are, however, no facts alleged in the Complaint that Plaintiff suffered adverse employment action or that Defendants took action against Plaintiff because of such complaints. Although an employer's permitting retaliatory co-worker harassment may subject the employer to liability, *see id.* at 446, that is not what is alleged here. Rather, the Complaint alleges an ongoing course of discriminatory treatment by Reilly, which began before

she ever complained about his conduct and continued thereafter, and the failure of DOCS and Fishkill to take appropriate remedial action. There simply are no factual allegations that Reilly, DOCS, or Fishkill acted, or failed to act, because Plaintiff complained about Reilly.

The Complaint does allege that Reilly retaliated against Plaintiff because her husband filed an affirmative action report against Reilly. Several circuit courts have held that, when spouses work for the same employer, a Plaintiff does not have standing to claim retaliation when she suffers adverse employment action because of the protected activity of her spouse. As the Eighth Circuit has held, "in order to establish a prima facie case of discrimination, the employee must have engaged in statutorily protected activity." *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir.1998); *see also Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226–27 (5th Cir.1996), *cert. denied,* 520 U.S. 1229, 117 S.Ct. 1821, 137 L.Ed.2d 1029 (1997); *See Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996) (noting that a plaintiff must ordinarily assert her own rights and interests and cannot rely on the legal interests or rights of others), *cert. denied,* 520 U.S. 1155, 117 S.Ct. 1335, 137 L.Ed.2d 494 (1997). The Eighth Circuit continued to state:

> We believe the rule advocated by [plaintiff]—that a plaintiff bringing a retaliation claim need not have personally engaged in statutorily protected activity if his or her spouse or significant other, who works for the same employer, has done so, is neither supported by the plain language of Title VII nor necessary to protect third parties, such as spouses or significant others, from retaliation.

*Smith*, 151 F.3d at 819.

While the Second Circuit has not yet decided this issue, it did recently affirm a district court case where the court permitted a plaintiff to proceed with a retaliation claim on the basis that the plaintiff was

retaliated against for a charge of discrimination filed by her sister. *See Thomas v. American Horse Shows Assoc., Inc.,* 1999 WL 287721, at *11 (E.D.N.Y.1999), *aff'd,* 205 F.3d 1324 (2d Cir.2000). Unfortunately, that case is of little precedential value because the district court ultimately found that the plaintiff failed to demonstrate the required causal connection and, in affirming the district court's decision, the Second Circuit plainly noted that "this Circuit has not yet decided whether a cause of action exists under Title VII for the third-party retaliation claims." *Thomas,* 205 F.3d 1324 (table).

Arguably, the Sixth Circuit's decision in *E.E.O.C. v. Ohio Edison, Co.,* 7 F.3d 541, 542 (6th. Cir. 1993), stands for the proposition that one employee may bring a Title VII claim when he is retaliated against for the actions of another employee. However, that decision's holding is limited to the situation where "an employee, or his representative, has opposed any practice made an unlawful employment practice." *Ohio Edison,* 7 F.3d 541, 545; *see also Baird ex. rel. Baird v. Rose,* 192 F.3d 462, 471 n. 10 (4th Cir.1999) (plaintiff could maintain retaliation claim where her mother engaged in protected activity on plaintiff's behalf). In *Holt,* the Fifth Circuit noted that, absent a representative capacity, a plaintiff does not have automatic standing to assert a retaliation claim when he suffers adverse employment consequences because of his wife's protected activity. *See Holt,* 89 F.3d at 1227 n. 2.

 Although, strictly read, 42 U.S.C. § 2000e–3(a) provides a cause of action to the person who actually engaged in the protected activity, as many district courts have recognized, such a result would contravene Title VII's enforcement provisions. *See E.E.O.C. v. Nalbandian Sales, Inc.,* 36 F.Supp.2d 1206, 1212 (E.D.Cal.1998); *Murphy v. Cadillac Rubber & Plastics, Inc.,* 946 F.Supp. 1108, 1118 (W.D.N.Y. 1996); *Thurman v. Robertshaw Control Co.,* 869 F.Supp. 934, 941 (N.D.Ga.1994); *Mandia v. ARCO Chemical Co.,* 618 F.Supp. 1248, 1250 (W.D.Pa.1985); *De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C.1978); *Asklar v. Honeywell, Inc.,* 95 F.R.D. 419, 424 (D.Conn.1982); *see also Wu v. Thomas,* 863 F.2d 1543 (11th Cir. 1989). In the relatively rare situation where a husband and wife work together, prohibiting the retaliated against spouse from maintaining an action would provide a means for an employer to circumvent Title VII's remedial scheme. Title VII should not be construed so narrowly. In fact, strictly construing the language of Title VII would preclude former employees from suing under Title VII because they are no longer an "employee" or "applicant for employment," 42 U.S.C. § 2000e–3, an argument that has been held to be contrary to Title VII's overall purpose. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). In one sense, Plaintiff would be asserting her husband's legal rights and, thus, she would not be entitled to proceed. In another sense, Plaintiff was the person actually injured by the type of conduct Title VII seeks to eradicate—retaliation for the filing of a charge of discrimination. *Cf. Kern,* 93 F.3d at 44 (denying standing to a plaintiff because she did not allege that she was personally retaliated against). The Court finds this latter reasoning to be more persuasive and, therefore, holds that, because Plaintiff alleges to have suffered adverse employment action by Defendants because of her husband's complaints of discrimination, she has standing to assert a Title VII retaliation claim.

The next question is whether Plaintiff suffered adverse employment action. "An employee could suffer a materially adverse change in the terms and conditions of her employment if her employer knew about but failed to take action to abate retaliatory harassment inflicted by co-workers." *Richardson,* 180 F.3d at 446. Here, the Complaint alleges that Reilly engaged in a pattern of harassing conduct after her husband filed an affirmative action report against him. The Complaint further alleg-

es that Reilly's conduct persisted despite Plaintiff's complaints to her superiors. As previously discussed *supra* with respect to Plaintiff's hostile work environment claim, the Complaint sufficiently alleges conduct by Reilly that could have adversely affected the terms and conditions of her work environment and that Defendants permitted this harassment to continue despite Plaintiff's complaints. Accordingly, the Complaint sufficiently alleges adverse employment action.

■ The last question is whether the Complaint sufficiently alleges facts supporting a causal connection between the alleged adverse employment action and the protected activity. The Complaint alleges that Reilly's conduct commenced shortly after (within a month) her husband filed the affirmative action report against Reilly. *See* Compl. at ¶¶ 19–21. The Complaint further alleges that Plaintiff immediately complained of Reilly's conduct, but that no action was taken. This temporal proximity and Defendants' alleged failure to act are sufficient indicia of causation to withstand Defendant's motion to dismiss. *See, e.g., Quinn,* 159 F.3d at 769; *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

The Court is mindful that Plaintiff also asserts claims pursuant to 42 U.S.C. § 1983, although the statutory and/or constitutional bases for such claims is unclear from the Complaint itself. If Plaintiff intends to assert retaliation claims on any other grounds, *see, e.g., Adler v. Pataki,* 185 F.3d 35, 41–43, she should move to amend her Complaint accordingly so Defendants would have fair notice of all claims she intends to assert.

### I. Equal Protection Claim

■ Defendants next assert that, because Plaintiff has failed to allege facts that Defendants acted with discriminatory intent, her § 1983 claim should be dismissed. Defendants also argue that a § 1983 claim may not be based upon the alleged violations of Title VII. For the reasons previously discussed, however, the Court finds that Plaintiff has sufficiently pled facts describing harassment on account of her gender by Reilly and that DOCS and Fishkill permitted such harassment to continue. Furthermore, the Second Circuit has rejected Defendants' argument that a § 1983 claim may not be based on facts giving rise to a Title VII claim. *See Annis v. County of Westchester,* 36 F.3d 251, 254–55 (2d Cir.1994); *Gierlinger v. New York State Police,* 15 F.3d 32, 34 (2d Cir.1994). Thus, the Complaint adequately states an Equal Protection violation.

### J. Qualified Immunity

■ Next, Defendants contend that they are entitled to qualified immunity because the Complaint fails to allege a clearly established right alleged to have been violated. Contrary to Defendants' assertion, freedom from discrimination on account of gender and race, which are plainly alleged in the Complaint, are clearly established rights. *See Jemmott,* 85 F.3d at 67; *Annis,* 36 F.3d at 254. Accordingly, Defendants are not entitled to qualified immunity on this ground.

### K. Plaintiff's Cross–Motion to Amend the Complaint

Plaintiff cross-moves to amend her Complaint to assert claims for violation of N.Y. Exec. Law § 296 (the "Human Rights Law" or "HRL"), the intentional infliction of emotional distress, and negligent supervision against Mann and Ercole.

■ Fed. R. Civ. P. 15(a) provides that leave to amend "shall be freely given when justice so requires." Such leave should be denied, however, when it would be futile, cause undue delay or prejudice, or when it is sought in bad faith. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Defendants allege that allowing the proposed amendments would be futile because: (1) there is no evidence that Defendants intended to discriminate against

Plaintiff; (2) the DHR did not dismiss the charge of discrimination for administrative convenience and, thus, she is precluded from maintaining a court action; (3) the tort claims are barred by the Eleventh Amendment; and (4) the intentional infliction of emotional distress claim is time-barred.

Defendants' first argument is without merit for the reasons discussed *supra* and, thus, warrants no further discussion.

Defendants' second argument is more persuasive. As the Second Circuit recently discussed:

> Subsection 9 of [Executive Law] § 297 provides a cause of action to any person claiming to be aggrieved by an unlawful discriminatory practice. That same subsection, however, precludes a cause of action if the person has filed a complaint with any local commission on human rights. We hold that the prohibition against filing in state court after a complaint has been filed with the Division of Human Rights applies to state law claims in federal courts as well.

*Whidbee*, 223 F.3d at 75. Subsection 9 of § 297 provides, however, that "where the [DHR] has dismissed such complaint on the grounds of administrative convenience, . . . [the] person shall maintain all rights to bring suit as if no complaint had been filed with the division." N.Y. Exec. Law § 297(9).

■ The evidence before the Court on this issue reveals that Plaintiff filed a charge of discrimination with the DHR in November 1997. In September 1999, the DHR found probable cause to believe that Defendants engaged in unlawful discriminatory conduct and recommended that matter for public hearing. The DHR has not dismissed the matter for administrative convenience. The Court recognizes that the EEOC did issue a right to sue letter upon Plaintiff's request. The EEOC, however, is not the same as the DHR. Because the matter is still before the DHR, Plaintiff is precluded from maintaining an action against Defendants pur-

suant to the HRL. Thus, permitting an amendment on this ground would be futile.

For the reasons discussed *supra*, it would be futile for Plaintiff to amend her Complaint to assert negligence causes of action against DOCS and/or Fishkill because of their Eleventh Amendment immunity.

As to Defendant's fourth argument, that the intentional infliction of emotional distress claim is time-barred, the last date referenced in the Complaint is October 1997. Because the statute of limitations for intentional infliction of emotional distress claims in New York is one year and the Complaint was not filed until the year 2000, such a claim would be time-barred. *See* N.Y.C.P.L.R. § 215; *Bardi v. Warren County Sheriff's Dep't.*, 260 A.D.2d 763, 764, 687 N.Y.S.2d 775 (3d Dep't 1999). Accordingly, permitting this amendment would be futile.

Defendants have not set forth any reasons why it would be futile for Plaintiff to amend her Complaint to add a cause of action of negligent supervision against Mann and Ercole. Accordingly, Plaintiff's motion for leave to amend to add this negligence cause of action is granted.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's opposition papers (docket no. 21) are stricken from the record, Defendants' motion to dismiss is GRANTED IN PART, and Plaintiff's cross-motion for leave to amend the complaint is GRANTED IN PART. The Complaint is DISMISSED IN ITS ENTIRETY as to Defendant Clark. Plaintiff's Title VII claims against the individual Defendants (Reilly, Mann, and Ercole) and her state law causes of action against Defendants DOCS and Fishkill are DISMISSED. Plaintiff may amend her Complaint to assert a cause of action for negligent supervision against Mann and Ercole only. In all other respects, Defen-

dants' motion and Plaintiff's cross-motion are DENIED.

**IT IS SO ORDERED.**