Stanley COOPER, Sheila Cooper, Richard C. Stein, as Trustee of the Trust for the benefit of Michael Cooper and Richard C. Stein, as Trustee of the Trust for the benefit of Adam Cooper, Plaintiffs–Appellants,

v.

Gerald L. PARSKY, William E. Simon, Richard K. Gottlieb, Charles G. Berg, Alan Andreini, Michael J. Sacks, J. Michael Bell, Peter Ackerman, W. Ross Reucassel, Raymond F. Sebastian, John H. Long, Jr., WSGP International, Inc., WSGP–USP, Inc., Century City 1800 Partners L.P., Wespar Insurance Brokerage, Inc., Southwest Venture Partners II, BMG Partners, Inc., IGI–Boler, Inc., Boler Petroleum Corporation, The International Group, Inc. (Delaware), The International Group, Inc. (Canada), Defendants–Appellees,

Elizabeth Cole, WSGP–Partners, L.P., Wsgp–Limited Partnership, Aurora 1800 Partners, L.P., Defendants.

Docket No. 97–7525.

United States Court of Appeals, Second Circuit.

Argued Jan. 8, 1998.

Decided April 2, 1998.

Richard C. Stein, New York City, (Edward Cherney, Woodbury, NY, on the brief), for Plaintiffs–Appellants.

Lawrence Byrne, New York City (On the brief: S. Elizabeth Foster, Gibson, Dunn & Crutcher, New York City, for Defendants–Appellees Parsky, Berg, Andreini, Ackerman, WSGP International, Inc., WSGP–USP, Inc., and Century City 1800 Partners L.P.; Jack Wenick, Michael G. Albano, Sills Cummis Zuckerman Radin Tishman Epstein & Gross, New York City, for Defendants–Appellees Reucassel, IGI–Boler, Inc., Boler Petroleum Corporation, The International Group, Inc. (Delaware), and The International Group, Inc. (Canada); Elisabeth Goot, Latham & Watkins, New York City, for Defendants–Appellees Simon and Wespar Insurance Brokerage, Inc.; K. Ann McDonald, Robinson Murphy & McDonald, New York City, for Defendants–Appellees Bell, Long, Southwest Venture PartnersII, and BMG Partners, Inc.; Peter Jakab, Fein & Jakab, New York City, Robert Gooding, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Newport Beach, CA, for Defendant–Appellee Sebastian; Ross E. Kimbarovsky, Hopkins & Sutter, Chicago, IL, for Defendant–Appellee Sacks).

Before: FEINBERG, KEARSE, and JACOBS, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiffs Stanley Cooper ("Cooper") and members of his family (collectively "the Coopers") appeal from a judgment of the United States District Court for the Southern District of New York, John G. Koeltl, *Judge,* dismissing their amended complaint alleging that defendants Gerald L. Parsky *et al.* violated various contractual, fiduciary, and other duties to plaintiffs in connection with the Cooper family's ownership of a corporation founded by Cooper. The district court found, *inter alia,* that there was no diversity jurisdiction, that it lacked personal jurisdiction over certain defendants, that the complaint failed to state a claim on which relief can be granted, and that most of plaintiffs' claims were barred by the statute of limitations. On appeal, plaintiffs primarily challenge the rulings that the complaint failed to state claims for breach of fiduciary duty, fraudulent conveyance, and breach of contract and that those claims were barred by the statute of limitations. They also contend that they effectively dropped from the lawsuit the defendant whose presence destroyed diversity. For the reasons that follow, we deem the nondiverse defendant to have been eliminated; we affirm the dismissal of all but one of plaintiffs' claims; and we remand for further proceedings on the reinstated claim.

## I. BACKGROUND

A. *The Events Alleged in the Amended Complaint*

According to the amended complaint, in October 1986, Cooper established a corporation called U.S. Petroleum ("USP" or the "Company"). Cooper was the first chairman and chief executive officer ("CEO") of USP; he and his family owned a majority of its stock. USP was established for the purposes of building the first free-standing petroleum wax refinery processing plant in the United States, and of acquiring and developing other petroleum-wax-producing properties and refineries. Cooper retained an investment banker in order to obtain $150,000,000 in financing for the construction of a plant in Utah.

In the meantime, USP and plaintiffs entered into other agreements for the infusion of capital. On December 22, 1987, USP entered into loan and investment agreements with defendant Southwest Venture Partners II ("Southwest" or "Southwest II"), a limited partnership, through which Southwest became USP's then-principal lender and a substantial shareholder. After Southwest's investment, the Coopers held approximately 71% of USP's stock. However, pursuant to these agreements, Cooper relinquished his positions as chairman and CEO, and Southwest was allowed to place four directors on USP's board. Among those named by Southwest were defendants J. Michael Bell, Raymond F. Sebastian, and John H. Long, Jr.

Simultaneously with the loan and investment agreements, two additional agreements were executed: (1) a Voting Agreement ("Voting Agreement"), pursuant to which the Coopers gave USP's directors proxies to vote the Coopers' USP shares for up to 10 years, and (2) a five-year employment agreement between USP and Cooper. The Voting Agreement provided, in pertinent part, as follows:

THIS AGREEMENT, made this 22nd day of December, 1987, among

those persons whose names appear on the signature page of this Agreement under the heading "Voters" (hereinafter, together with persons who may succeed them as hereinafter provided, called the "Voters"),

those persons and trusts whose names appear on the signature page of this Agreement under the heading "Stockholders" (hereinafter, the "Stockholders"), and

U.S. Petroleum Corp., a Delaware corporation with its principal office at 230 Park Avenue, New York, New York (hereinafter, the "Company")

WITNESSETH:

WHEREAS, in order to enhance the continuity of the management of the Company, the parties desire to enter into this Agreement,

NOW THEREFORE, in consideration of the mutual covenants and agreements hereinafter contained, the parties hereby agree as follows:

1. Each Stockholder agrees that, for the term of this Agreement, his, her or its shares of Common Stock of the Company ... shall be voted by the Voters in the manner hereafter provided, and to that end does hereby irrevocably constitute the Voters as his, her or its proxy to vote the same as so provided....

. . . .

3. The Voters, who shall consist of the then directors of the Company who may hold such office from time to time, shall have the power and authority to vote the Shares with respect to all matters affecting the Company for which the action of the holders of the Common Stock of the Company is required or permitted.... In casting their votes, the Voters shall not be held by this Agreement to any specified standard of care on [*sic*] fiduciary responsibility and in no event shall they be liable to any of the Stockholders except for their gross negligence or wilfull [*sic*] misconduct. In addition, the Voters shall cast their votes in a manner consistent with the purposes and intent of Sections 5.7 and 7.1 of the Investment Agreement, dated December 1987 between the Company and Southwest Venture Partners II.

4. This Agreement shall terminate and expire on the earliest of the following dates to occur: (a) the seventh anniversary of the date when the Company's Plant (proposed to be constructed in Salt Lake City, Utah for the separation of wax and other petroleum products from crude oil and for the further processing of wax) shall have been placed in service, (b) such date as the Company shall have issued and sold, by means of an underwritten public offering and an effective registration statement under the Securities Act of 1933, as amended, in one or more transactions, at least 10% of the Company's Common Stock then outstanding, (c) such date as the number of shares of Common Stock of the Company owned by the Stockholders shall in the aggregate become less than 10% of the total then outstanding, (d) such date on which all indebtedness included in the construction financing for the aforesaid Plant (or any refinancing thereof) shall have been paid in full, (e) the date, if any, prior to the first drawing down of funds for the construction of aforesaid Plant on which Salomon Brothers Inc shall cease to be the Company's investment banker, (f) the date on which Stanley H. Cooper shall die or become permanently incapacitated (in which event the Shares shall be voted by Joel Stern, Esq. or Mr. Cooper's executor, as the case may be,) or (g) the tenth anniversary of the date of this Agreement....

5. This Agreement shall be binding upon and enure to the benefit of the parties hereto and upon and to others as follows:

. . . .

*Any Voter:* So long as any Voter shall remain a director of the Company and thereafter, upon and to any person who shall succeed to or replace such person as such director; and

*The Company:* any one or more successors by way of merger, consolidation or sale of assets.

(Voting Agreement dated December 22, 1987, at 1–5.) The amended complaint alleged that when the Voting Agreement, which the amended complaint refers to as a "Trust," was entered into,

[u]nder no circumstances was the Voting Trust to be used to dilute or eliminate the equity interest of the Coopers.... Further, at the same time, Long, Bell and Sebastian represented to the Coopers that the voting of the Trust would be purely ministerial, and for administrative purposes.... The statements were false at the time, and the true objective of having the power to dilute the Cooper holdings was never disclosed.

(Amended Complaint ¶ 48.)

Under the employment contract, Cooper was to serve as a senior employee and receive the same annual salary, minus one dollar, as the president of USP, along with various other benefits; his employment was to be terminable only for cause. The term of

the employment contract was five years; Cooper was fired and locked out of the USP premises after five months. He commenced an arbitration proceeding against USP for breach of the contract, in which he eventually prevailed.

In the meantime, USP entered into additional financial arrangements and transactions with other entities, that, in violation of the Voting Agreement, "cannibalized" USP and left it "an empty shell." (Amended Complaint ¶ 39). For example, in May 1989, WSGP–USP, L.P. ("WSGP–USP–L.P."), a limited partnership affiliated with defendant WSGP–International, Inc. (then owned by defendants William Simon and Gerald Parsky), and with defendant WSGP–USP, Inc., obtained "majority voting control of 50.1% of USP" in exchange for a secured loan of $7,375,000.00 (Amended Complaint ¶ 17) or a purchase price of $7,200,000.00 (*id.* ¶ 54); but WSGP–USP–L.P. provided only $4,347,-846.00 in cash (*id.* ¶¶ 17, 54), and the balance of the purported loan/purchase price was "a questionable paper transaction with Sebastian, Long, Bell, BMG [Partners, Inc.,] and Southwest II," in violation of the Voting Agreement. Thereafter, as described below, virtually all of USP's assets were transferred to a newly created subsidiary, control of the subsidiary was transferred to a WSGP-affiliated entity, and USP was left without significant assets.

In August 1989, Cooper received an interim award in his arbitration proceeding against USP; the award required that USP continue to pay him, pending resolution of the dispute, the salary due him under the employment contract, *i.e.,* one dollar per year less than the annual salary of USP's CEO. Defendants then took steps to circumvent this requirement: In December 1989, they caused USP to create a wholly owned subsidiary, Petrowax PA Inc. ("Petrowax"), whose sole business purpose, *i.e.,* manufacturing and distributing wax, was the same as that of USP; the operations, personnel, and finances of USP and Petrowax were intermingled; and the annual salary of Gene Blendermann, the then-CEO of both USP and Petrowax, was divided disproportionately between the two entities, with the part payable by USP decreased from $225,000 to $27,500.

In October 1990, Cooper received a second interim award in the arbitration proceeding, and he reduced that award to judgment in April 1991. In light of the disproportionate restructuring of Blendermann's salary, the judgment required that Cooper's salary be measured by the payments to Blendermann due from USP and from "any related entity." In order to enforce his judgment, Cooper served a restraining order on USP in June 1991; by April 1991, however, another Simon–and–Parsky–owned entity, WSGP Partners L.P., had replaced USP as majority stockholder of Petrowax. Shortly after the restraining order was served, USP transferred most of its sole remaining asset—its stock in Petrowax—to Petrowax.

In February 1992, Petrowax, in which USP then held a less-than-3% stake, filed for reorganization under Chapter 11 of the Bankruptcy Code in federal court in Delaware; in August 1992, USP began liquidation proceedings under Chapter 7 of the Bankruptcy Code in federal court in New York. Claims filed by Cooper in the Petrowax proceedings were disallowed. Petrowax was reorganized and continued in business, with sales approaching $100 million a year.

In sum, according to the amended complaint, Southwest purchased a minority interest in USP and secured proxies to vote the Coopers' 71% interest in the Company, with the assurance that those proxies were merely for ministerial convenience; defendants affiliated with Southwest then proceeded to, *inter alia,* use those proxies to wipe out the Coopers' interest by selling a majority interest in the Company to WSGP–USP–L.P. for less than full consideration, shifting USP's business to a subsidiary, and transferring ownership of the subsidiary to another WSGP-affiliated entity. Defendants' actions gave the subsidiary a $100 million-a-year business and left USP an empty shell, with the Coopers having an interest only in the latter.

## B. *The Dismissal of the Present Action*

The present action was commenced on December 14, 1995; the amended complaint, filed in 1996, set out the allegations described

above, among others, and sought damages for, *inter alia*, fraud, conspiracy, self-dealing, breach of fiduciary duty, breach of contract, tortious interference with contractual relations, and intentional infliction of emotional distress. Jurisdiction was premised on diversity of citizenship; however, the amended complaint acknowledged that plaintiffs, who were New York citizens, had been advised that the limited partners of Southwest included a New York entity, though plaintiffs had not yet been able to verify that information. The amended complaint stated that "[i]f they [*sic*] are deemed to be New York residents, we shall dismiss Southwest as a defendant." (Amended Complaint ¶ 21.)

Defendants moved to dismiss the complaint on various grounds, including lack of diversity jurisdiction because of Southwest's New York citizenship, lack of personal jurisdiction over several individual defendants, failure to state a claim upon which relief can be granted, failure to plead fraud with particularity, and untimeliness under the pertinent statutes of limitations. Plaintiffs opposed the motions, making numerous arguments, and they reiterated their willingness to drop Southwest as a defendant if the court found that Southwest's presence destroyed diversity of citizenship. The motions were referred to Magistrate Judge Naomi Reice Buchwald for report and recommendation.

In a painstakingly thorough Report and Recommendation dated January 8, 1997, the magistrate judge concluded that the complaint should be dismissed on various grounds. First, she noted that the general partner of one of Southwest's limited partners was a corporation whose principal place of business was in New York, and hence Southwest was a citizen of New York within the meaning of 28 U.S.C. § 1332. *See, e.g., Carden v. Arkoma Associates*, 494 U.S. 185, 192–95, 110 S.Ct. 1015, 1019–21, 108 L.Ed.2d 157 (1990) (for diversity purposes a partnership is deemed to take on the citizenship of each of its partners). Since plaintiffs too were New York citizens, there was no diversity. Rejecting plaintiffs' various arguments as to why the citizenship of the entities in question should ·be deemed not to destroy diversity, the magistrate judge concluded

that "[e]ither Cooper must drop his claim against Southwest as he has proposed, ... or the case must be dismissed." Report and Recommendation at 20.

Next, the magistrate judge found that it lacked personal jurisdiction over (a) five individual defendants, to wit, Bell, Sebastian, and Long, who became directors of USP in 1987, W. Ross Reucassel, who became a director in 1989, and Michael J. Sacks, who was alleged to be an investor in USP; and (b) two institutional defendants, to wit, BMG Partners, Inc., a Texas corporation that was Southwest's general partner, and Wespar Insurance Brokerage, Inc., a Simon–and–Parsky-owned Delaware corporation that allegedly caused USP and Petrowax to prepay certain insurance premiums while they were insolvent. The magistrate judge found that none of these seven defendants were present in New York and that the allegations of the amended complaint were insufficient to permit the exercise of long-arm jurisdiction over them.

As to the substance of plaintiffs' allegations, the magistrate judge concluded, following a claim-by-claim analysis, that the amended complaint failed to state any claim on which relief could be granted and that, in addition, virtually all of the claims were barred by the statute of limitations. As to the claims that plaintiffs were fraudulently induced to enter the Voting Agreement and the employment contract, the magistrate judge found, *inter alia*, that the amended complaint largely failed to allege misrepresentations of fact upon which a fraud claim could be based, and it contained no more than conclusory allegations of scienter. Even where there were allegations of specific misrepresentations, there was generally no identification of the defendant who made the alleged misrepresentation; rather, "[m]ost of the fraud is alleged to have been perpetrated by all twenty-two defendants, with no mention of actual statements by any one of them." Report and Recommendation at 40.

The magistrate judge noted that plaintiffs alleged with specificity that Bell, Sebastian, and Long had represented to plaintiffs that the Voting Agreement was needed only for ministerial purposes. But she concluded that

reliance on that representation could not be considered reasonable, for such minor purposes were belied by other terms of the Agreement, including the statement that one of the parties' purposes was to "enhance the continuity of the management of the Company" (Voting Agreement at 1).

The magistrate judge also noted that many of the events most strenuously challenged by the complaint had taken place more than six years prior to the December 14, 1995 commencement of the present action. These included the alleged misrepresentations by Bell, Sebastian, and Long in November and December 1987 in connection with the execution of the Voting Agreement, WSGP–USP–L.P.'s acquisition of majority control of USP in May 1989, and the formation of Petrowax on December 6, 1989.

As for the claims of breach of fiduciary duty by the defendants who were directors of USP, the magistrate judge found those claims foreclosed by the terms of the Voting Agreement:

> the agreement, signed by all the plaintiffs, explicitly states that "[i]n casting their votes, the Voters shall not be held by this Agreement to any specified standard of care on [sic] fiduciary responsibility and in no event shall they be liable to any of the Stockholders except for their gross negligence or wilfull [sic] misconduct." . . . . Although plaintiffs are suing for breach of fiduciary duty, their memorandum seems to concede that they waived any such duty when they agreed to this provision, in that plaintiff[s'] memorandum states that plaintiffs are suing under the gross negligence and willful misconduct clause of the sentence. . . .
>
> We agree with defendant[s] that plaintiffs waived the fiduciary duty normally owed shareholders under voting trust agreements. The terms of the Voting Agreement are explicit enough to effect the waiver. . . . Plaintiffs may not sue upon a duty which was expressly excluded from the Agreement.
>
> Even if a fiduciary duty was owed to plaintiffs under the Agreement, the complaint fails to allege a breach of the voters' duty under the Agreement. . . . The

Agreement nowhere states, as plaintiff [sic] claims it does, that "[u]nder no circumstances was the Voting Trust to be used to dilute or eliminate the equity interest of the Coopers." . . . . To the contrary, the Agreement specifically lists as a possible date of its termination "such date as the number of shares . . . owned by [plaintiffs] shall in the aggregate become less than 10% of the total then outstanding."

Report and Recommendation at 47–49 (footnote omitted). The magistrate judge also noted that "although plaintiffs' amended complaint and memoranda refer to the Voting Agreement as a 'Voting Trust,' the actual document itself is entitled 'Voting Agreement' and nowhere contains the word 'trust.' " Id. at 48, n. 15.

As to plaintiffs' claims that defendants violated the terms of the Voting Agreement, the magistrate judge concluded that the amended complaint failed to state a claim because there was no viable allegation that that agreement was breached:

> [T]he Agreement stated only that plaintiff[s'] shares "shall be voted as a simple majority of the Voters shall direct," and that the votes were to be cast "in a manner consistent with the purposes and intent of . . . the Investment Agreement." . . . . Plaintiff [sic] does not allege that the shares were voted in a manner that breached this agreement.

Id. at 58. The magistrate judge stated that, in any event, plaintiffs' contract claims were barred by the six-year statute of limitations.

The magistrate judge's report also pointed out that many of plaintiffs' allegations that defendants had engaged in self-dealing, had made transfers while USP was insolvent, and had caused dilution of USP's assets, could not be pursued by plaintiffs in their individual capacities. "Injuries such as those the plaintiffs allege they suffered as shareholders, i.e., mismanagement and diversion of corporate assets by officers and directors for their own benefit, are considered injuries to the corporation only." Id. at 50. The magistrate judge found that although individual USP directors may have owed Cooper a duty in his individual capacity as a judgment cred-

itor of USP while the Company was insolvent, "no breach has been alleged that is not also time-barred." *Id.* at 53. The magistrate judge also found that the amended complaint did not allege facts adequate to support piercing the corporate veil of either USP or Petrowax.

Finally, the magistrate judge found the allegations of the amended complaint insufficient to meet the rigorous standard for claims of infliction of emotional distress. Even had that standard been met, the claims would have been barred by the applicable one-year statute of limitations.

The district court reviewed plaintiffs' objections to the Report and Recommendation and rejected them. In an Opinion and Order dated March 25, 1997, the court accepted the recommendations of the magistrate judge and dismissed the amended complaint. Judgment was entered accordingly, and this appeal followed.

## II. DISCUSSION

On appeal, plaintiffs challenge the district court's rulings that the amended complaint failed to state claims on which relief can be granted and that most of their claims were barred by the statute of limitations. Except to the extent that the amended complaint alleges that certain defendants breached the Voting Agreement by engaging in gross negligence or willful misconduct, we reject plaintiffs' challenges and affirm the judgment of dismissal substantially for the reasons stated in the magistrate judge's Report and Recommendation. For the reasons below, the claim for breach of the Voting Agreement may be pursued, albeit only against three defendants.

■ Dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The task of the court in ruling on a Rule 12(b)(6) motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (internal quotation marks omitted). The court is required to accept as true all factual allegations in the complaint, *see, e.g., Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996), and to consider documents attached to or incorporated by reference in the complaint, *see, e.g., Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one. *See, e.g., Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). A dismissal for failure to state a claim is reviewed *de novo. See, e.g., Bernheim v. Litt,* 79 F.3d at 321.

■ In the present case, although the Voting Agreement, attached to the amended complaint, made clear that the "Voters" who agreed to vote the Coopers' shares were not to be held to the ordinary standard of care applicable to fiduciaries ("the Voters shall not be held by this Agreement to any specified standard of care on [*sic*] fiduciary responsibility"), it also made clear that they could be held liable "for their gross negligence or wilfull [*sic*] misconduct." (Voting Agreement at 3.) The amended complaint alleged that after entering into that agreement, the Voters committed various wrongful acts, including improperly issuing USP common stock to USP officers; transferring assets from USP and/or Petrowax in return for suspect consideration; diverting assets of those companies to individual defendants; attempting to conceal the amount of Blendermann's compensation in order to avoid obligations due Cooper under the Employment Agreement; and approving the transfer of USP's principal remaining asset, its stock in Petrowax, to Petrowax at a time when USP was insolvent. We cannot say that plaintiffs can prove no set of facts in support of these allegations which would establish their claims of gross negligence or willful misconduct.

■ Nor is it clear that all of these acts were committed outside the statute-of-limitations period. Ordinarily, under New York

law, a claim for breach of fiduciary duty would be governed by a three-year limitations period if the action sought monetary relief but by a six-year period if the action sought equitable relief. *See Loengard v. Santa Fe Industries, Inc.*, 70 N.Y.2d 262, 266–67, 519 N.Y.S.2d 801, 803, 514 N.E.2d 113 (1987) (ruling six-year statute applicable); *Geren v. Quantum Chemical Corp.*, 832 F.Supp. 728, 735 (S.D.N.Y.1993) (applying three-year statute), *aff'd mem.*, 99 F.3d 401 (2d Cir.1995). This, however, is plainly not an ordinary claim for breach of fiduciary duty, for in the Voting Agreement the Coopers agreed not to seek to hold the Voters to the ordinary standard of care applicable to fiduciaries. By the same token, since the rights and obligations of the Coopers and the Voters were defined by the Voting Agreement, and that agreement expressly provided that the Voters could be held liable for acts of gross negligence or willful misconduct, allegations of such malfeasance may properly be viewed as stating a claim for breach of contract, which is governed by the six-year statute of limitations. *See* N.Y. C.P.L.R. § 213(2). Much of the challenged conduct is alleged to have occurred in 1990 and 1991, within the six-year period preceding the filing of the initial complaint in December 1995. We note also that, although plaintiffs may not recover for conduct that occurred prior to the limitations period, evidence of such conduct may be admissible to shed light on the motives with which acts within the limitations period were performed. *See generally Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir.1992).

We conclude that so much of the amended complaint as alleged that the Voters engaged in conduct that could rationally be viewed as gross negligence or willful misconduct should not have been dismissed for failure to state a claim upon which relief can be granted, and that that cause of action is not entirely barred by the six-year statute of limitations.

This does not mean that plaintiffs are entitled to pursue that claim against all of the defendants. The obligation imposed by the Voting Agreement to refrain from gross negligence or willful misconduct was imposed only on those whom that agreement desig-nated as "Voters." That term was defined both as "those persons whose names appear on the signature page of this Agreement under the heading 'Voters' " and as the "persons who may succeed them as hereinafter provided" (Voting Agreement at 1); and the agreement thereafter provided that the Voters "shall consist of the then directors of the Company who may hold such office from time to time" (Voting Agreement at 2). Thus, the amended complaint states a claim only against the individual defendants who were directors of USP at the times the alleged acts of gross negligence or willful misconduct occurred.

Seven of the individual defendants are alleged to have been directors of USP. They are Long and Sebastian, who were signers of the Voting Agreement in 1987; Bell, named a director in December 1987; and Reucassel, Richard K. Gottlieb, Charles G. Berg, and Alan Andreini, alleged to have become directors in 1989. The complaint was properly dismissed against all other defendants for failure to state a claim.

 Further, as to four of the seven ·individuals who were, by definition, "Voters," to wit, Bell, Long, Reucassel, and Sebastian, the district court concluded that there was no personal jurisdiction. Any contention that that conclusion was erroneous has been waived on this appeal, for plaintiffs' only mention of personal jurisdiction appears in a footnote in their reply brief, stating simply "that it was error to dismiss the amended complaint, for alleged lack of personal jurisdiction, as against certain defendants, without holding an evidentiary hearing or allowing discovery. *Cutco Industries v. Naughton*, 806, F.2d 361, 364 (2d Cir.1986)." (Reply Brief at 2 n. 2.) This was an insufficient presentation. An appellant is required to set out his "contentions . . . on the issues presented, and the reasons therefor" in his main brief. Fed. R.App. P. 28(a)(6). A challenge to a district court ruling may not be made for the first time in the appellant's reply brief. *See, e.g., Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir.1993). Further, a contention is not sufficiently presented for appeal if it is conclusorily asserted only in a footnote. *See, e.g., United*

*States v. Restrepo,* 986 F.2d 1462, 1463 (2d Cir.), *cert. denied,* 510 U.S. 843, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993).

Accordingly, we do not disturb the district court's dismissals of Bell, Long, Reucassel, and Sebastian for lack of personal jurisdiction. The claim for breach of the Voting Agreement may be pursued only against Gottlieb, Berg, and Andreini.

 Finally, we note that the magistrate judge properly recognized that diversity was lacking because of the New York citizenship of Southwest. Plaintiffs conceded in their amended complaint, as well as in other papers presented to the district court that if indeed Southwest were determined to be a New York citizen for diversity purposes, they would drop Southwest from the action. Since we see no resulting prejudice to any party, we deem Southwest eliminated as a party defendant. *See generally Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 837–38, 109 S.Ct. 2218, 2225–26, 104 L.Ed.2d 893 (1989); *Turtur v. Rothschild Registry International, Inc.,* 26 F.3d 304, 307–09 (2d Cir.1994); Fed.R.Civ.P. 21 ("[p]arties may be dropped ... by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just").

### CONCLUSION

We have considered all of the contentions advanced on this appeal, and, except to the extent indicated above, have found them to be without merit. Southwest is deemed voluntarily dismissed from the action. The judgment of the district court is vacated insofar as it dismissed the amended complaint for failure to state a claim against the defendants who were directors of USP for breach of the Voting Agreement, and the matter is remanded for further proceedings on that claim against Gottlieb, Berg, and Andreini. In all other respects, the judgment of the district court is affirmed.

We would suggest that plaintiffs be instructed to file a new amended complaint, meeting the requirements of Fed.R.Civ.P. 8(a) and (e) and confined to the reinstated claim against the three defendants over whom the court has personal jurisdiction. We express no view on the merits of the reinstated claim, nor do we foreclose the possibility that further proceedings may properly include motions for summary judgment.

No costs.