**DUNBAR**

v.

**HAMDEN BOARD OF EDUCATION et al.**

**No. 3:03CV212(JBA).**

United States District Court,
D. Connecticut.

June 4, 2003.

---

Jerome T. Dunbar, New Haven, CT, pro se.

Gregg Peter Goumas, Shipman & Goodwin, Hartford, CT, for defendants.

### Ruling on Pending Motions [Docs.##4, 5–1, 5–2, 10–1, 10–2]

ARTERTON, District Judge.

After notice and two full hearings on the merits (one of which was before a State Board of Education "Impartial Hearing Officer"), Jerome Dunbar's four children were "dis-enrolled" from the Hamden public schools based on a conclusion that the children did not reside in Hamden and were thus not entitled to free educational services there. In addition to filing two separate actions in state court, Dunbar commenced this action against the Board of Education and various officials of the Hamden school system, asserting myriad constitutional and statutory violations. Dunbar filed motions for appointment of counsel [Doc. # 4] and preliminary injunctive relief [Doc. # 5], while the Board of Education filed a motion to dismiss [Doc. # 10–1] or for summary judgment [Doc. # 10–2]. For the reasons set out below, the Board's motion to dismiss [Doc. # 10–

1] is granted, the remaining motions are denied, and the case is dismissed.

### I. Background[1]

On August 19, 2002, Dunbar and Marilyn St. Louis (the children's mother) were notified by the Superintendent of Schools that the Dunbar children were suspected of not actually residing in Hamden and thus of being ineligible to attend the Hamden public schools. The letter informed Dunbar and St. Louis of their right to request a hearing, which they did on August 30. A hearing was held on September 9, 2002, and on September 19 the Board informed Dunbar and St. Louis of its conclusion that the Dunbar children did not reside in Hamden.[2]

Dunbar and St. Louis appealed this decision to the Connecticut State Board of Education on October 8, 2002, and hearings were held on October 30 and November 25, 2002. The hearing officer rendered her decision on January 8, 2003, concluding that the children did not reside in Hamden and were thus ineligible for free school services in Hamden. On January 16, 2003, the Superintendent of Schools notified Dunbar and St. Louis that pursuant to the hearing officer's determi-

nation, the children would be dis-enrolled from the Hamden school system effective January 23, 2003. In accordance with statute, the children had been allowed to continue attending Hamden schools throughout the appeals process until the final determination by the State Board of Education. *See* Conn. Gen.Stat. § 10–186(b)(1) ("Any child ... who is denied accommodations on the basis of residency may continue in attendance ... pending a hearing pursuant to this subdivision.").

On January 22, 2003, Dunbar filed an action in the Connecticut Superior Court for emergency injunctive relief, *Dunbar v. Hamden Bd. of Ed.*, No. CV–03–0473361–S (Conn.Super.), and his *ex parte* application for a temporary restraining was denied by the Superior Court (Munro, J.) that day, *see* [Doc. # 11 Ex. 2]. Dunbar then commenced this action in federal court on January 30, and subsequently withdrew his state court action on February 4. On February 26, 2003, Dunbar commenced an administrative appeal in the Superior Court of the decision of the Connecticut State Board of Education hearing board, *Dunbar v. State Bd. of Ed.*, No. CV–03–0520717–S (Conn.Super.), which remains pending.

---

1. The following facts are taken from: (1) plaintiff's filings [Docs.## 3, 5 & 13], (2) the exhibits attached to and incorporated by reference in those filings, and (3) the decision of the Connecticut State Board of Education hearing board [Doc. # 8 Ex. 7]. *See Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993) ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.") (citations omitted). Additionally, the Court takes judicial notice of

the filing and pendency of actions in the Connecticut Superior Court.

2. This conclusion was reached based on, *inter alia*, the testimony of a residency officer, Susan Thibault, who had surveilled the children's alleged residence (155 Auguer Street in Hamden) on 21 separate occasions between January 16, 2002 and May 30, 2002. On each occasion, Thibault (who began observing at 5:00 am each morning) never saw the Dunbar children exit 155 Auger Street for school in the morning, despite the fact that on each of the observation dates the children attended a Hamden school. On many of the observation dates, Thibault observed Dunbar drop the children off at the 155 Auger Street address early in the morning.

## II. Standard

"The task of the court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (*quoting Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984)). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one." *Cooper,* 140 F.3d at 440 (*citing Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996)).

## III. Discussion

■ While the complaint lists numerous rights allegedly infringed by the Board's actions, the gist of Dunbar's claim is that the Board's actions: (1) violate his children's "[right to an] education secured to them by the Constitution of the United States," [Doc. # 5] at 6; (2) deny the children procedural due process in that they were dis-enrolled from school prior to the expiration of time to commence an administrative action in the Superior Court appealing the State Department of Education's conclusion of non-residency [3]; and (3) deprive the children of substantive due process. The first contention, asserting a right to education guaranteed by the federal constitution, is without merit, as the

Supreme Court has held that education "is not among the rights afforded explicit protection under our Federal Constitution." *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 25, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). As set out below, the remaining contentions are similarly unavailing given the extensive pre-deprivation procedures already accorded.

### A. Procedural Due Process

■ The Fourteenth Amendment prohibits a state governmental actor (such as the Hamden Board of Education) from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. const. amend. XIV. To establish a procedural due process claim, a plaintiff must show first that he possessed a protected liberty or property interest, and second that he was deprived of that interest without due process of law. *McMenemy v. City of Rochester,* 241 F.3d 279, 285–286 (2d Cir.2001) (*citing Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998) (per curiam)).

As to the first requirement,

It is well-established that the Due Process Clause does not itself create the property interests that it protects. Such property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. The Supreme Court has explained that to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

---

**3.** *See* [Doc. # 5] at 5 ("plaintiffs have the accorded right to appeal the State Department of Education's decision ... however[,] even though the four Dunbar children have been in school since September pending the hearing and appeals[,] the Hamden Board of Education choose [sic] to disenroll the four minor Dunbar children ...") (internal quotations omitted).

*Id.* at 286 (internal citations, quotations and alterations omitted). It is undisputed that the Dunbar children have a state-law created property interest in their education. *See Packer v. Board of Ed. of Town of Thomaston,* 246 Conn. 89, 103–104, 717 A.2d 117 (1998). While they have no property right to attend school in Hamden unless they reside within that school district, *see Yale v. West Middle Sch. Dist.,* 59 Conn. 489, 22 A. 295 (1890); *see also Baerst v. State Bd. of Ed.,* 34 Conn.App. 567, 572, 642 A.2d 76 (1994) ("residence is the critical factor determining where a child attends school"), the premise of Dunbar's challenge is that the children *do* live in Hamden, and the Court accepts that allegation as true for the purposes of the motion to dismiss. Thus, the first element of a procedural due process claim is properly pled in the complaint.

The second element Dunbar must plead in order to state a procedural due process claim is that his children were deprived of their property right in attending the Hamden public schools without due process of law. This inquiry necessarily turns on how much process is "due," which is determined by balancing the nature of the private interest, the efficacy of additional procedures, and the government's interests. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "The formality and procedural requisites" of the process due in any particular case "can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (citations omitted); *accord Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing *appropriate to the nature of the case.*") (emphasis added, quotation omitted).

While recognizing that a child's interest in his or her education is undoubtedly very significant, *cf. Brown v. Board of Ed.,* 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954) ("education is perhaps the most important function of state and local governments"), the Court has no difficulty concluding that the extensive pre-deprivation procedures afforded by the Hamden Board of Education sufficiently supplied the Dunbar children with as much process as they were due. Dunbar and St. Louis were provided with notice of the Board's suspicions more than five months prior to the children's actual dis-enrollment, they were accorded two opportunities to challenge the Board's conclusion, receiving two pre-deprivation hearings on the merits at which they presented evidence. There is no reason to believe that a third or fourth determination of the children's residency would result in better (as opposed to merely different) results, and the Board's interest in conserving its resources for students who actually reside in the district was substantial, *see Martinez v. Bynum,* 461 U.S. 321, 329–330, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983) ("The State ... has a substantial interest in imposing bona fide residence requirements to maintain the quality of local public schools.").

While Dunbar takes issue with the Board's decision to dis-enroll the children while an appeal to the Superior Court was still possible, the Board's action was in compliance with state law, *see* Conn. Gen. Stat. § 4–183(f), and did not, in light of the extensive pre-deprivation process that was provided, deprive the children of due process of law. Given that "[t]he touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard in a meaningful manner," *Howard v. Grinage,* 82 F.3d

1343, 1349 (6th Cir.1996) (quotation omitted), there can be no doubt that sufficient process was accorded plaintiff.

## B. Substantive Due Process

■ In addition to its guarantees of procedural regularity, the Fourteenth Amendment's due process clause contains a substantive component as well. To succeed on a substantive due process claim, a plaintiff "must show that the government action was arbitrary, conscience-shocking, or oppressive in a constitutional sense, and not merely incorrect or ill-advised." *Catanzaro v. Weiden,* 188 F.3d 56, 64 (2d Cir.1999) (*citing Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995)) (internal quotations omitted). This claim fails because Dunbar has pleaded nothing which suggests that the Board's actions "were anything worse than incorrect or ill-advised." *Id.* Even if one were to assume that the Dunbar children do reside in Hamden and that the Board's determination to the contrary was erroneous, the most that has transpired is that a factual error was made. While indeed unfortunate, such errors, without more, are not remediable as violations of substantive due process.

## C. Remaining Claims

■ Dunbar's invocation of the right to privacy, the privileges and immunities clause and the equal protection clause are unavailing, as the Supreme Court has upheld challenges to bona fide residency requirements in the face of similar constitutional challenges:

A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents. Such a requirement with respect to attendance in public free schools does not violate the Equal Protection Clause of the Fourteenth Amendment. It does not burden or penalize the constitutional right of interstate travel, for any person is free to move to a State and to establish residence there. A bona fide residence requirement simply requires that the person ... establish residence before demanding the services that are restricted to residents.

*Martinez,* 461 U.S. at 328–329, 103 S.Ct. 1838 (footnotes omitted). While Dunbar disagrees with the factual conclusion that his children are not residents of Hamden, the Board's operation and application of a bona fide residency requirement has deprived Dunbar of no right guaranteed by the privacy, equal protection and privileges and immunities protections of the U.S. Constitution.[4]

Finally, Dunbar invokes certain Connecticut constitutional, statutory and common law claims. Supplemental jurisdiction over such claims is declined in light of the dismissal of all claims over which the Court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

While Dunbar's persistence in attempting to advance his children's welfare is understandable and laudable, he nonetheless has failed to state a claim of violation of a federal right upon which relief may be granted. Dismissal of the complaint under Fed.R.Civ.P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii) is thus mandated.[5]

**4.** The Fourth and Fifth Amendments, also invoked by Dunbar, appear to have no application to this set of facts: Dunbar complains of no "search" or "seizure," and the Fifth Amendment's due process clause applies to actions of the federal government.

**5.** Defendants' alternative invocation of Fed. R.Civ.P. 12(b)(1) is unavailing: while the

The Board's motion to dismiss [Doc. # 10–1] is GRANTED, the remaining motions [Docs.## 4, 5–1, 5–2 & 10–2] are DENIED, and supplemental jurisdiction over any state law claims is declined. It is certified that no appeal of this order would be taken in good faith under 28 U.S.C. § 1915(a)(3). The Clerk is directed to close this case.

IT IS SO ORDERED.

complaint states no federal claim upon which relief can be granted, it is founded upon a claimed violation of federal constitutional rights, and at least the procedural due process claim is not "so patently without merit" as to defeat subject matter jurisdiction. *Bell v. Hood,* 327 U.S. 678, 683, 66 S.Ct. 773, 90 L.Ed. 939 (1946).