**BACARELLA TRANSPORTATION SERVICES, INC., Plaintiff,**

v.

**RIGHT WAY LOGISTICS, LLC, Michelle Ulery, and ICAT Logistics, Inc., Defendants.**

No. 3:08CV01487(DJS).

United States District Court,
D. Connecticut.

Aug. 3, 2009.

---

Robert B. Flynn, O'Connell, Flaherty & Attmore, Hartford, CT, for Plaintiff.

Brian E. Spears, Janna Douville Eastwood, Levett Rockwood, Westport, CT, Karen A. Doner, Williams Mullen, McLean, VA, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Bacarella Transportation Services, Inc., also known as BTX Air Express ("the Plaintiff"), brings this action against the defendants, Right Way Logistics, LLC ("Right Way"), Michelle Ulery ("Ulery"), and ICAT Logistics, Inc.

("ICAT") (collectively, "the Defendants"), alleging breach of contract (First Count); liability pursuant to Conn. Gen.Stat. § 34–214 (Second Count); tortious interference with a business relationship (Third, Fifth, and Sixth Counts); breach of the covenant of good faith and fair dealing (Fourth Count); and conspiracy to commit tortious interference with a business relationship (Seventh, Eighth, and Ninth Counts). The Defendants have moved to dismiss the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Counts, and have moved for summary judgment on the Second Count, of the amended complaint. For the reasons that hereafter follow, the motion to dismiss (**dkt.# 42**) is **DENIED without prejudice to the Defendants raising the same arguments in a subsequent motion for summary judgment,** and the current motion for summary judgment (**dkt.# 43**) is **GRANTED.**

## I. MOTION TO DISMISS

### A. STANDARD

A Rule 12(b)(6) motion to dismiss seeks dismissal for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to

offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

### B. FACTS

The following facts are alleged in the amended complaint. The Plaintiff is a Connecticut corporation located in Monroe, Connecticut. Right Way is a limited liability company located in Lewis Center, Ohio. Ulery was the managing member of Right Way. During all times relevant to this case, the Plaintiff provided back-office logistics services to its customers. From approximately May 2004 to December 2007, Right Way provided transportation services for the Plaintiff as an independent contractor.

To govern their relationship, the Plaintiff and Right Way negotiated and entered into a transportation services agreement ("the Agreement") on May 24, 2004. In the Agreement, Right Way agreed to not engage any other person or entity to perform services substantially similar to those performed by the Plaintiff within a geographical area specified in the Agreement. Right Way also agreed to use its best efforts to promote the Plaintiff's services, and to not perform any services that would compete with the Plaintiff's services during the term of the Agreement. The Plaintiff and Right Way further agreed that the Agreement would be effective through the third anniversary from the date of acceptance, and would continue thereafter on a year-to-year basis on the

condition that either party could terminate the Agreement without cause so long as sixty days prior notice was provided. Additionally, the Plaintiff and Right Way agreed that the Agreement could be terminated for cause if Right Way entered into any agreement, understanding, or arrangement in which it engaged in a business competitive with the Plaintiff's business, including providing services to any person or entity other than the Plaintiff.

On January 3, 2008, Right Way permanently ceased performance under the Agreement and began doing business with ICAT, a rival of the Plaintiff. On January 29, 2008, Right Way terminated the Agreement by way of a letter signed by Ulery. The Plaintiff maintains that, during the course of its business relationship with Right Way, a business relationship existed between the Plaintiff and JC Penney Corporation ("JC Penney"). According to the Plaintiff, Right Way began to redirect JC Penney's business to ICAT before providing the Plaintiff with the termination notice. The Plaintiff asserts that Right Way was aware that the Plaintiff would have no opportunity to retain the JC Penney account if Right Way diverted the account to ICAT prior to issuing the termination notice. In addition, the Plaintiff claims that Right Way sold its assets to ICAT in an attempt to circumvent its obligations under the Agreement and render itself immune from any recovery of damages. The Plaintiff further claims that Right Way purposely structured the purchase of its assets by ICAT to deprive the Plaintiff of its contractual rights, specifically, its right to continue providing services to JC Penney, to preserve its relationship with JC Penney, and to retain the JC Penney account. The Plaintiff contends that it was unable to continue or retain its business relationship with JC Penney and, as a result, suffered actual economic losses.

## C. DISCUSSION

The Defendants move to dismiss the tortious interference with a business relationship claims (Third, Fifth, and Sixth Counts); breach of the covenant of good faith and fair dealing claim (Fourth Count); and conspiracy to commit tortious interference with a business relationship claims (Seventh, Eighth, and Ninth Counts) against them.

The Court notes that this is the second motion to dismiss filed by the Defendants. The first motion was directed toward the original complaint (which did not contain the conspiracy claims), and was ruled upon by the Honorable Peter C. Dorsey. *See Bacarella Transp. Servs., Inc. v. Rightway Logistics, LLC*, No. 3:08–CV–1487(PCD), 2009 WL 322871 (D.Conn. Feb. 10, 2009). In that decision, Judge Dorsey noted that "[i]n claims for tortious interference that have survived motions to dismiss, plaintiffs have at minimum alleged some fact, above and beyond intentional interference, that would permit a court to infer the requisite tortious conduct." *Id.* at *3 Judge Dorsey then found that the Plaintiff had "essentially just recited the elements of a claim for tortious interference, without providing any sense of what actions Defendants are alleged to have taken that constituted fraudulent, malicious or otherwise tortious conduct beyond the allegation of the interference itself." *Id.* Judge Dorsey came to the same conclusion with regard to the Plaintiff's good faith and fair dealing claim. *See id.* at *4. In conclusion, Judge Dorsey dismissed the tortious interference and good faith and fair dealing claims, finding that the Plaintiff "appear[ed] to be attempting to turn an ordinary breach of contract claim into a series of tort claims without pleading the relevant factual underpinnings." *Id.* at *5.

The Plaintiff then moved to file an amended complaint, seemingly to re-plead the tortious interference and good faith and fair dealing claims again, along with new conspiracy claims, with further "factual underpinnings." (*See* dkt. # 32.) The Plaintiff attached a copy of the proposed amended complaint to its motion to amend. (*See id.*) The Defendants opposed the motion to amend on the basis that the Plaintiff had not offered any good cause explanation as to why it should be allowed to either re-plead claims that had previously been dismissed or add new claims. (*See* dkt. # 34.) The Defendants also argued that the Plaintiff had unduly delayed moving to amend, and that they would be substantially prejudiced if leave to amend was given. On May 5, 2009, Judge Dorsey granted the Plaintiff's motion to amend over the Defendants' objections, stating that "[g]iven the relatively early stage of the litigation, it is in the interest of justice to permit Plaintiff to amend its Complaint so that its claims can be decided on the merits." (*See* dkt. # 38, p. 4.) In his decision, Judge Dorsey pointed out that "[n]otably, Defendants have not opposed Plaintiff's Motion for Leave to Amend on the ground that the proposed amendments fail to cure the deficiencies in the Complaint that were identified in the Court's Ruling on the Motion to Dismiss, nor have Defendants argued that the proposed amendments are futile." (*Id.*, p. 3.) [1]

■ With the above history of this case in mind, the Court now addresses the present motion to dismiss. In the Court's view, the Plaintiff, heeding Judge Dorsey's words from his ruling on the first motion to dismiss, has included the bare factual underpinnings that allow the tortious interference, good faith and fair dealing, and conspiracy claims to survive a motion to dismiss. In the amended complaint, the Plaintiff alleges that, during the course of its business relationship with Right Way, it had a business relationship with JC Penney. The Plaintiff further alleges that: (1) Right Way began to redirect JC Penney's business to ICAT before providing the Plaintiff with a termination notice; (2) Right Way was aware that the Plaintiff would have no opportunity to retain the JC Penney account if Right Way diverted the account to ICAT prior to issuing the termination notice; (3) Right Way sold its assets to ICAT in an attempt to circumvent its obligations under the Agreement and render itself immune from any recovery of damages; (4) Right Way purposely structured the purchase of its assets by ICAT to deprive the Plaintiff of its contractual rights, specifically, its right to continue providing services to JC Penney, to preserve its relationship with JC Penney, and to retain the JC Penney account. The Court finds these factual allegations, which must be accepted as true for the purposes of deciding the motion to dismiss, sufficiently plead the Defendants' improper motive and means.

That being said, the Defendants may, in any subsequent summary judgment motion, raise the same arguments they raised here. Some of the factual allegations in the Plaintiff's amended complaint are not clearly understood, such as the allegation that a purportedly direct business relationship between the Plaintiff and JC Penney could be destroyed by Right Way breaching a contract with the Plaintiff that does not appear to have any connection to JC Penney. The Court assumes that the Plaintiff would not include facts in its amended complaint simply so that it could, in Judge Dorsey's words, "turn an ordinary breach of contract claim into a series of tort claims." The Court would not look

---

**1.** On May 19, 2009, this case was transferred to the undersigned.

kindly on such conduct. In any event, the Court believes that the arguments raised here would be best decided after the facts are more fleshed out and after the Court has reviewed the admissible evidence. As a result, the motion to dismiss is denied without prejudice to the Defendants raising the same arguments in a subsequent motion for summary judgment.

## II. SUMMARY JUDGMENT

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. DISCUSSION

The Defendants move for summary judgment with regard to the Second Count, which is directed toward Ulery only. The Second Count is brought pursuant to Conn. Gen.Stat. § 34–214, which allows claims against:

(1) [a] dissolved limited liability company to the extent of its undistributed assets, or (2) if the assets of a dissolved limited liability company have been distributed in liquidation, ... one or more members of the dissolved limited liability company to the extent of their pro rata shares of the claim or the assets of the limited liability company distributed to them in liquidation, whichever is less, but no member's total liability for all claims under this section shall exceed the total amount of assets distributed to that member.

*Id.*

Although Right Way was organized within Ohio, the parties do not discuss whether and to what extent the Court should use Ohio law as it relates to the dissolution of limited liability companies. The parties focus solely on Connecticut law even though Right Way, if it were to dissolve, presumably would have to act in accordance with the laws of Ohio. Fortunately, upon review of both states' statutes, the Court finds that any difference between their dissolution laws is immaterial to this discussion. Under Connecticut law,

[a] limited liability company is dissolved and its affairs shall be wound up upon the happening of the first to occur

of the following: (1) At the time or upon the occurrence of events specified in writing in the articles of organization or operating agreement; (2) unless otherwise provided in writing in the articles of organization or operating agreement, upon the affirmative vote, approval or consent of at least a majority in interest of the members; or (3) entry of a decree of judicial dissolution

Conn. Gen.Stat. § 34–206. Under Ohio law,

> A limited liability company organized under this chapter shall be dissolved upon the occurrence of any of the following events: (1) The expiration of the period, if any, fixed by the operating agreement or articles of organization for the duration of the company; (2) One or more events specified in writing in the operating agreement as causing the dissolution of the company; (3) The unanimous written agreement of all members to dissolve the company; (4) Except as provided in division (C) of this section, the withdrawal of a member of the company, unless the business of the company is continued by the consent of all of the remaining members or under a right to continue the company that is stated in writing in the operating agreement; (5) Upon entry of a decree of judicial dissolution. . . .

Ohio Rev.Code Ann. § 1705.43(A).

The Court notes that, because this is a summary judgment motion, not a motion to dismiss, it can review and use any admissible, relevant evidence to make its decision, and it is not obligated to accept as true all the factual allegations in the amended complaint. In the amended complaint, the Plaintiff alleges that Ulery was the managing member of Right Way prior to ICAT's purchase of Right Way, which was dissolved after the purchase, and that upon Right Way's dissolution, Right Way's assets, including proceeds from the sale of its assets, were distributed to one or more members of Right Way, including Ulery. The Defendants, however, move for summary judgment on the Second Count on the basis that, despite the allegations in the amended complaint, Right Way is not a dissolved company, and remains in existence and in good standing with the State of Ohio.

The Plaintiff has responded to the summary judgment motion by asking the Court to defer its ruling because more discovery on the issue of dissolution is needed. The Plaintiff argues that, because the occurrence of events specified in the articles of organization can dissolve a limited liability company, the Plaintiff should see Right Way's articles of organization before a decision is made here. The Plaintiff also wants information on Right Way's financial status, professional status, and assets; the production of Right Way's accounting documents; or other evidence showing that Right Way is "*de facto*" dissolved.[2]

---

**2.** The Plaintiff does not define this "*de facto*" dissolution of a limited liability company. According to the Corpus Juris Secundum,

> A "de facto" dissolution is one which has not been effected pursuant to the governing statute, but which has the same characteristics of cessation of corporate activity.
>
> "De facto" dissolution means that dissolution has in circumstances and in fact taken place, as where a corporation by reason of insolvency or other reason suspends all

of its obligations and goes into liquidation without having technically availed itself of the statutory procedure provided for that purpose. De facto dissolution may be shown with evidence that the corporation has no property; no meetings are held, no officers are elected, and no business or corporate functions conducted.

> A corporate entity is not dissolved by a change of ownership. With a stock purchase, the corporation whose stock is ac-

The Court is not persuaded by the Plaintiff's arguments. To begin with, the Defendants have submitted a certificate of good standing from Jennifer Brunner, Ohio's Secretary of State, dated May 15, 2009. This certificate states that Right Way, which "was organized within the State of Ohio on July 7, 2004, is currently in FULL FORCE AND EFFECT upon the records of this office." (Dkt. # 43, Ex. 1.) The Plaintiff does not argue that this certificate is somehow erroneous or inauthentic.

In addition, there is no evidence of the occurrence of events specified in the articles of organization that would have dissolved Right Way. In fact, the evidence indicates that no such events occurred. Under either Connecticut or Ohio law, documentation of a limited liability company's dissolution is filed with the secretary of state after the occurrence of any of the events of dissolution specified by statute. Conn. Gen.Stat. § 34–211; Ohio Rev.Code Ann. § 1705.43(B). Right Way's certificate of good standing from Ohio is prima facie evidence that there has been no occurrence of events specified in the articles of organization that would have dissolved Right Way.

Moreover, the Plaintiff offers no legal basis explaining how a so-called "*de facto*" dissolution of a limited liability company (if such a dissolution is something other than one of the types of dissolution described in Conn. Gen.Stat. § 34–206) can be considered a valid dissolution for the purposes of enforcing Conn. Gen.Stat. § 34–214. It appears that some jurisdictions recognize *de facto* dissolution as an equitable principle. *See* 19 C.J.S. Corporations § 915 (citing cases); 16A Fletcher Cyc. Corp. § 7967 (citing cases). The Plaintiff, however, points to no case from either Connecticut or Ohio that recognizes "*de facto*" dissolutions. *Cf. J.D. Grief Adver. v. Showboat Inn Inc.*, No. CV89 0102595S, 1990 WL 272170, at *3 (Conn.Super.Ct. April 17, 1990) ("Although the court's research has uncovered an early Missouri case ..., which discusses the concept of de facto dissolution in terms of the actions of a corporation, a review of Connecticut cases reveals no authority in this jurisdiction which has recognized a 'de facto dissolution' or conveyance of its assets."); *Smitko v. Schiano*, No. 1370, 1988 WL 64771, at *4 (Ohio Ct.App. June 17, 1988) ("The Ohio Revised Code provides ... [the] ways in which a corporation may be dissolved.... Nowhere in the code does the term *de facto* dissolution appear. In fact, it has been held that in regard to the ... statutes dealing with the dissolution of corporations in Ohio[,] ... the provisions of the Ohio Statutes for the dissolution of corporations are *exclusive*.") (emphasis in original).

Additionally, even if the Court could recognize a *de facto* dissolution of a limited liability company under Connecticut or Ohio law, the Defendants have produced

---

quired continues in existence, even though there may be a change in its management.

The cessation of business operations at a certain location does not have the legal effect of a corporate dissolution.

19 C.J.S. Corporations § 915 (internal footnotes omitted); *see* 16A Fletcher Cyc. Corp. § 7967 ("A de facto dissolution ... has been said to take place when the acts of a corporation demonstrate a total voluntary abandonment of its franchise. The mere fact that the corporation has quit doing business does not necessarily constitute a de facto dissolution. A corporation, like an individual, may be in a state of suspended animation. Its functions may be in abeyance but nevertheless its existence as a corporation continues.... A corporation ... does not cease to exist because it has become insolvent, it has ceased to carry on business, it has only one shareholder, or does not have any officers.... The mere transfer of assets is not sufficient to give rise to a determination of de facto dissolution.") (internal footnotes omitted).

Ulery's affidavit, wherein she states that Right Way remains in existence, and that she is still Right Way's President. The Plaintiff offers not even a soupçon of evidence that would cast doubt on Ulery's affidavit.

Furthermore, as noted in footnote 2 above, Right Way's existence as a limited liability company can continue even if it has: (1) held its functions in abeyance or ceased to carry on business; (2) become insolvent; (3) only one member, or does not have any managers; and (4) transferred its assets. The occurrence of these events is not sufficient to give rise to a determination of *de facto* dissolution even in jurisdictions that recognize *de facto* dissolution as an equitable principle. The additional discovery sought by the Plaintiff regarding Right Way's accounting documents, financial status, professional status, and assets, would not be determinative here. Consequently, with regard to the Second Count of the amended complaint, the motion for summary judgment is granted.

### III.   CONCLUSION

For the foregoing reasons, the motion to dismiss (**dkt. # 42**) is **DENIED without prejudice to the Defendants raising the same arguments in a subsequent motion for summary judgment,** and the current motion for summary judgment (**dkt. # 43**) is **GRANTED.** Judgment in favor of defendant Michelle Ulery shall enter on the Second Count of the amended complaint.